Garland *v.* Stewart et al.

BURR GARLAND, Plaintiff in Error, *v.* STEWART and YERGER, Defendants in Error.

1. SALE OF PERSONAL PROPERTY.—S. and Y. proposed to G. to sell him a slave, which was at the time unsound, at a reduced price, to be paid by the draft of G. accepted by a third person, having twelve months to run, to which G. assented; the slave being too unwell to be removed at that time, S. and Y. agreed that she might remain with them until she recovered sufficiently to be carried to the vendee; the slave afterwards died before she was delivered, and without G. having given his draft as agreed upon. *Held,* that the sale was complete, and that G. was liable for the purchase-money.

2. SAME.—When the terms of a sale are agreed upon, and the bargain is struck, and everything that the seller has to do with the goods is complete, the contract of sale becomes absolute, without actual payment or delivery, and the property and the risk of accident to the goods vests in the buyer; and this is also the rule in cases where the buyer has not acquired the right to the *possession* of the goods, by reason of his failure to comply with his part of the contract.

3. PRINCIPAL AND AGENT.—If the agent undertake to give his draft in payment of property, bought by him for his principal; and he fail to do so, he will be liable to the seller, for the price agreed to be paid.

4. NEW TRIAL.—Where there is a conflict of testimony, the verdict will not be set aside, unless it be very clearly wrong.

IN error from the Circuit Court of Hinds county. Hon. John I. Guion, judge.

For a history of the case reference is made to the opinion of the court.

*George L. Potter*, and *Johnson* and *Shelton*, for plaintiff in error,

Contended that the proof did not show that the sale was complete, and that the title to the property had passed to Garland. That it was a mere proposition to sell, which by the terms of the agreement was to remain inchoate and incomplete, until the draft was given and accepted, and the slave delivered. That the draft was to be accepted by the Hilzheims, and that the security was to be given before the seller parted with his property; and that in all cases of the sort the title did not pass until the security was given. Story on Sales, §§ 296, 313; 2 Kent, Com. 642; *Lupin* v. *Marie,*

6 Wend. 80, 81; *Whitewell* v. *Vincent,* 4 Pick. 451, 452; Story on Con. §§ 800, 801, 804; Chitty on Con. 375; *M'Donald* v. *Hewett,* 15 Johns. R. 394. That the proof showed that Garland was acting as agent for J. D. Ware, and that the plaintiff knew this. The liability, if any, is on Ware, and not on Garland. Story on Agency, §§ 261, 263.

*Freeman* and *Dixon,* for defendants in error.

This was an action by defendants in error, for the purchase-money of a slave. The proof shows that the slave was sold by defendants to plaintiff in error, when she was sick, and known to be unsound by the purchaser; that the slave was permitted to remain with the vendor until she was sufficiently improved to be removed; but that she died at the house of the vendor.

The defence set up is the non-delivery of the slave. The proof contained in the bill of exceptions makes a clear case of sale and delivery of the slave, and that she remained in the possession of the vendor after the sale by agreement of the parties to the sale. See the case of *Stamps* v. *Bush,* 7 How. (Miss.) R. in conclusion of the case.

FISHER, J., delivered the opinion of the court.

The defendants in error brought this action in the Circuit Court of Hinds county, to recover the sum of $600, and interest thereon, being the price which it is alleged the plaintiff in error agreed to pay for a certain slave, sold to him by the defendants in error.

The defence set up was, that the contract was not complete, and that the slave died before the contract was completed. The material facts, as disclosed by the evidence of the plaintiffs below, are these: Hilzheim proves that in 1852, he agreed to purchase from Stewart, one of the plaintiffs, the said slave, that the witness was authorized and directed by the defendant to make the purchase, at the sum of $600, to be paid by a draft on the house of P. & H. Hilzheim, falling due the 1st of January, 1853, "that this proposition was fully assented to by the plaintiff and the defendants;" that at the time of the purchase, the slave was sick at the residence of Stewart, about four miles from Jackson; that this fact was known to the defendant; the woman being in fact

unsound, and worth, if sound, as much as $1500. "That defend-ant some time afterwards, in a conversation with Stewart said, that he would send his little wagon to Stewart's for the slave, when she got well enough to be removed." This was said in reply to a remark of Stewart, that the slave might, if desired by Garland, remain at his (Stewart's) house, until she got well enough to be removed." "That the draft was never drawn or accepted pur-suant to the agreement; that the slave was not at the time delivered to the defendant; that when informed of the arrangement he assented to it, and that witness agreed to accept the draft." To the same effect, a letter written by the defendant below to Stewart, was read in evidence. It is as follows:—"Your letter of the 8th and 12th inst., has just been handed me by our mutual friend, Mrs. H. Hilzheim. The proposition you made in regard to the sale of your servant woman is accepted by me—$600— payable on the 1st day of January next, by my draft on H. & P. Hilzheim of Jackson."

We have quoted so much of the testimony as relates to the completion of the contract, and the question is, whether it is suffi-cient for that purpose, to wit: to show in the language of the books, "that the bargain was struck."

It has not been thought necessary to notice the testimony of the defendant; for admitting that it is what counsel say it is—direct and clear that the contract was not completed—it still would pro-duce but a conflict in the evidence, and thus leaving the question to the jury, whose verdict would be, except in a very clear case, conclusive on this point. But to return to the plaintiff's testi-mony. It is certain that the contract, so far as the vendors were concerned, was considered as complete; the proposition to sell was accepted by the defendant; the price, and manner of payment, were both agreed upon, and the slave subject to the purchaser's control. Upon being told that the slave was too unwell to be re-moved, he replied, that he would send his little wagon for her as soon as she was well enough to be removed. It is manifest that the indisposition of the slave was the only reason why she was not immediately delivered. She was delivered in point of fact, so far as a delivery could then be made. Stewart said to Garland, that

"the slave can remain at my house, if you so desire, until she is well enough to be removed." This was a matter about which Garland was left free to exercise his choice, which he did—as any prudent man would have done under the circumstances—by leaving his property where it ought to remain, at least for a short time. Stewart could not be understood, by merely proposing a friendly or neighborly act, as assuming the attitude of a warrantor, or as making the slave's recovery a condition in the contract. Her condition was already understood, and the price regulated accordingly.

We are, therefore, of opinion, that the verdict of the jury—finding that the contract was so far completed as to work a change of property—must be sustained. If Garland, from what was done, acquired the right of property to the slave, the loss must fall upon him. He could acquire the right of property without acquiring the right of possession. The latter he could only claim upon complying with his part of the agreement. 2 Kent, 492.

But it is said that he acted as agent of Ware, in making the purchase, and is therefore not liable. The answer to this position is, that he undertook to give his own draft, and never proposed, in any manner, to bind Ware for the purchase-money.

Judgment affirmed.

SMITH, C. J., gave no opinion.