## Cox et al. v. Tucker et al.

(Division A. Oct. 22, 1923, Suggestion of Error Overruled Nov. 19, 1923.)

[97 So. 721. No. 23518.]

1. NEW TRIAL. *New trial will not be awarded where verdict on conflicting evidence except for manifest error or where against the great weight of evidence.*

In a case where the evidence is conflicting and the verdict depends upon the weight to be given the testimony of the witnesses, and upon inferences to be drawn from facts proven and the conduct of the parties in interest, a new trial will not be granted except for clear and manifest error in the rulings of the court, or where the verdict is against the overwhelming weight of the evidence.

2. WILLS. *New trial on issue devisavit vel nón not granted where evidence for judgment substantial and believable, though weak.*

A new trial on an issue *devisavit vel non* will not be granted on the ground that the verdict is against the overwhelming weight of the evidence, even though the court should be of opinion that the evidence against such verdict is strong while the evidence in its favor has many elements of weakness, where the latter is not unbelievable, but substantial.

APPEAL from chancery court of Lowndes county.

HON. T. P. GUYTON, Chancellor.

Suit by Mrs. Willie Cox Tucker and others against J. S. Cox, Jr., and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

*William Baldwin* and *Lincoln & Lincoln,* for appellants.

On the 6th day of July, 1920, Mrs. M. E. Ostrander, an old lady resident of Lowndes county, Mississippi, died at her home in said county. After her death there was found in a metal box in the closet of her bedroom, among her receipts and other papers, an envelope upon which was written the words "My Will." In this envelope in that

metal box was found a written paper, the paper being monogram paper of the old lady's, with a large letter "O" engraved upon it. That paper read thus: (The original is on file with the record in this court.)

"Columbus, Miss.
Nov. 11, 1918.

To the Judge:

I write this to let you know how I want my property divided. I want my brother my administrator without any bond. I want him to have a nice monmt on my square.

I want my grand daughter to have my farm the furnitur in my sitting room, dinig room kitchin and her bed room, and one half my money.

I want my brother to have my store house my cottage the furnitur in my room and Parlor and other half of my money.

MRS. M. E. OSTRANDER."

A few days after death, to-wit: July 9, 1920, this will was presented to John J. Richards, chancery clerk of Lowndes county, Miss., for probate. The chancery clerk as he considered it, admitted the will to probate and appointed the brother, D. S. Cox, to be the executor and issued letters testamentary to the brother upon the estate. This on July 9, 1920.

The brother, D. S. Cox, proceeded with the administration of the estate under the will, with no objection nor question ever raised so far as appears from the record, or any other source, by anyone as to this will being the will of the old lady. The days, months, a year and a half passed by, no one ever questioning the will, and the brother, executor of the will and one of the beneficiaries, died in January, 1921, and still no one questioned the will.

Again the days and months went on and the two years allowed by law for the contest of wills being about to expire, when in May, 1922, certain of the kin of the old lady, not one of whom lived in Lowndes county, Miss.,

where the old lady lived and died and where the facts were known, filed their bill in chancery court of Lowndes county, Miss., denying that the will probated was the will of the deceased old lady, Mrs. Ostrander.

The case came to trial. The contestants, appellees, introduced no testimony tending to prove the incapacity of Mrs. Ostrander to make a will, their only witnesses were to the effect that the old lady believed that the dead would live again and come back to the earth. Contestants introduced witnesses who never knew Mrs. Ostrander, nor ever saw her writing and knew nothing of her handwriting. These witnesses, comparing the signature to the will to certain signatures to checks and other papers of the old lady, gave it as their opinion that there was some difference in the signatures.

Upon this testimony the jury, for some reason known only to themselves, brought in a verdict against the will.

There are submitted two propositions, either of which settles conclusively that this verdict is an intolerable wrong to the living and the dead, and should not be permitted to stand. 1st: That this verdict is directly in the teeth of testimony that established beyond doubt that this is the will of the dead woman, Mrs. M. E. Ostrander; 2nd: That the only testimony upon which the verdict could possibly rest is utterly unable to support the verdict and that it should be promptly set aside.

The authorities seem to recognize that in testing the genuineness of a disputed writing more reliance should be placed on similitude or dissimilitude as to general characteristics than as to the formation of particular letters. Thus in *Doe* v. *Suckermore,* 5 Ad. and El. 703, 31 E. C. C. 406, COLERIDGE, J., said: "The test of genuineness ought to be the resemblance, not to the formation of the letters in some other specimen or specimens, but to the general character of writing, which is impressed on it as the involuntary and unconscious result of constitution, habit, or other permanent cause, and is therefore itself permanent."

In determining the issue of the genuineness of handwriting it has been said, that evidence of dissimilarities is not equally cogent and weighty with evidence of similarities—*Constable* v. *Steible,* 1 Hag. Ecc. (Eng.) 56.

The witnesses who judge of the turn of the letters, differ from each other. Messrs. Ross and Wiles find the difference in the letter "G," Mr. Wright in the form of the letter "S." In *Risley* v. *Indianapolis, etc., R. Co.,* 7 Biss. 408, 20 Fed. Cas. No. 11, 859, the court said: "We know that men, even good scribes, do not always sign their names exactly the same way. Dissimilitude may be occasioned by a variety of circumstances, by the state of health and spirits of the writer, by the materials, by his position, and by his hurry or care."

Dissimilarities in particular letters seem to be highly probable; "for the slightest peculiarities of circumstance or position" said Sir JOHN NICHOLL, in *Robson* v. *Rocke,* 2 Add. Ecc. (Eng.) 53, "as, for instance, the writer sitting up or reclining, or the paper being placed upon a harder or softer substance, or on a plane more or less inclined— nay, the materials, as pen, ink, etc., being different at different times—are amply sufficient to account for the same letters being made variously at the different times by the same individual.

As to the testimony of the witnesses as to variations in the handwriting of the signature to the will and signatures to certain checks and other writings of the old lady Ostrander: This matter of letting witnesses testify as to comparison of handwriting who had no personal knowledge or familiarity with the writing and give their opinion thereon, is as old as the law and we have the experience and ideas and learning of centuries of judges and law writers thereon.

In the American courts such testimony is generally admitted under statutes confining it to certain conditions. We have no statute in Mississippi, but the law is uniform and without a dissent that it is the weakest of all testi-

mony and just as apt to mislead as to help and should be received with great caution.

Propriety of Comparison. The most satisfactory proof of handwriting, where the party alleged to have executed the instrument is unavailable, is said to be the testimony of a witness who saw the instrument executed and is able to identify it. The next best testimony is thought to be that of witnesses who have seen the party whose writing is in controversy write, or have had access to or possession of his writings, so as to impress the character of the writings upon the mind.

This court has twice made its clear warning as to this sort of testimony, how deceptive it is and how apt to mislead. *Moye* v. *Herndon*, 30 Miss. 118.

The opinion of experts based on comparison of handwriting alone is evidence of low degree and has been regarded by eminent judges as much too uncertain, even when only slightly opposed, to afford a safe foundation for judicial decision. *Black* v. *Black*, 30 N. J. Eq. 215.

What are the differences in the signatures noted by those witnesses who claim to see a difference. They are all practically the same: 1st: That the letter "M" in the will is written connectedly and not in three strokes as in some of the other signatures; 2nd: That the signature to the will is punctuated and the other signatures are not punctuated; 3rd: That the letter "E" in the initials "M. E." in the will does not go below the line as in the other signatures, which go below the line; 4th: That the long tail added to the name Ostrander does not, in the will, go back to the letter "t" and cross it, as in the others.

The only question before this court is as to who wrote this will. There is every evidence that Mrs. Ostrander wrote it and none that anyone else wrote it, or wanted such a will. Now the old lady Ostrander died in July, 1920, more than one and a half years after the death of her granddaughter. So surely the granddaughter did

not, upon the death of the old lady, get up this will and put it in the old lady's valuables where it was found, for she was herself long since dead.

Who is the other beneficiary of the will? Her brother D. S. Cox. Did he get up this will? If so he was an imbecile, for none other than a howling idiot would have gotten up such a will under the circumstances. It is submitted that a strong proof of the will is the handwriting of the old lady Ostrander.

If there is anything clear on the face of this will, it is the fact that this will is written in the natural handwriting of the party who wrote it, that it is not an adopted handwriting. From start to finish in this will, we see that it is the same handwriting, simple and natural, of someone who is not imitating but writing their ordinary handwriting. *Moody* v. *Russell,* 17 Pickering (Mass.) 490; 28 Am. Dec. 317; *Travis* v. *Brown,* 43 Penn. State, 9, 82 Am. Dec. 540.

*Sturdivant, Owen & Garnett,* for appellees.

"Was the instrument in writing here probated as the last will and testament of Mrs. M. E. Ostrander, wholly written and subscribed by her in her own handwriting; and if so, was she then, November 11, 1918, of sound and disposing mind and memory?" (R-19 to 22).

The jury returned into court a verdict, signed by the twelve of them, as follows: "We, the jury, find that the written instrument offered in evidence as Mrs. M. E. Ostrander's will, is not her will." (R-38). No complaint is made as to the instructions given or refused; nor is there any complaint as to the rulings of the chancellor on the admission and exclusion of evidence. We are brought now to the single issue: Was there any material evidence tending to support the verdict of the jury?

In *Morrison* v. *Porter,* 59 Am. Rep. 331, the Minnesota court, after explaining that the principal objection to

the use of other instruments for comparison was the danger of collateral issues as to the genuineness of the instrument used for comparison, said: "When the writings presented are admitted to be genuine, so that collateral issues are not likely to arise, nor the adverse party surprised by evidence which he is unable to meet, these objections seem to be insufficient for excluding the evidence."

In general, and from necessity, the authenticity of handwriting must be subject to proof by comparison of some sort.

So much for the handwriting. All the evidence went to the jury without objection. As in the matter of handwriting, so as to mental capacity, the contestants' evidence went to the jury without objection. There was sharp conflict, and, since there was conflict, the unanimous verdict of the jury settles it.

The proponents themselves prepared and submitted instructions which made it proper for the jury to pass upon Mrs. Ostrander's capacity to make a will; and since the verdict was against them, it is too late for them to complain. We insist that the issues were submitted to the jury under proper instructions of which there is no complaint. The evidence went to jury without objection. The appellants are making the bald request that this court, in defiance of the precedents of more than a hundred years disregard the verdict of the jury, and weigh the evidence and determine the credibility of the witnesses, to the end that they may enjoy an increased share of Mrs. Ostrander's estate. Their request is without sanction of law, and, therefore, should be denied.

Argued orally by *Wm. Baldwin* and *B. A. Lincoln* for appellant, and *C. L. Garnett* and *J. I. Sturdivant* for appellee.

Anderson, J., delivered the opinion of the court.

This was an issue *derisarit vel non* tried by a jury in the chancery court of Lowndes county. Appellees were the contestants of the alleged will of Mrs. Ostrander, deceased, while appellants were the proponents of said will and contestees. The issues were whether the alleged will was a forgery, and, if not, whether the maker was capable mentally of making the will. There was a verdict in favor of appellees, and a judgment accordingly setting aside said alleged will, from which judgment appellants prosecute this appeal.

Clearly this was not a case for a peremptory instruction for appellants, because there was evidence for as well as against the validity of the will.

The only question presented is whether or not the verdict of the jury was against the overwhelming weight of the evidence. If it was, appellants should be granted a new trial. In a case where the evidence is conflicting and the verdict depends upon the weight to be given the testimony of the witnesses, and upon inferences to be drawn from facts proven and the conduct of the parties in interest, a new trial will not be granted except for clear and manifest error in the rulings of the court, or where the verdict is against the overwhelming weight of the evidence. *Wood* v. *Gibbs,* 35 Miss. 559; *Garland* v. *Stewart,* 31 Miss. 314; *M. & O. R. R. Co.* v. *Bennett,* 127 Miss. 413, 90 So. 113. No ruling of the court in the trial of this case is assigned as error or argued by appellants except the overruling of their motion for a new trial based on the insufficiency of the evidence to sustain the verdict.

The evidence in favor of the alleged will is very strong, while the evidence against its validity has many elements of weakness. But the latter cannot be said to be unbelievable. This court under the law has no authority to set its judgment up against that of the jury except for the purpose of determining whether there was sufficient evidence to support the verdict. It is the duty of this court where the verdict of the jury is against the overwhelming

weight of the evidence to grant a new trial. However, we cannot say with perfect confidence that this is that kind of a case. We are therefore constrained to permit the verdict of the jury to stand.

*Affirmed.*