RENA *et al. v.* WELLS *et al.*

(Division B.   April 20, 1936.)

[167 So. 620.   No. 32131.]

**C. A. Jaquess** and **J. D. Magruder**, both of Tunica, for appellants.

George P. Ritchey, of Tunica, and Brewer & Montgomery, of Clarksdale, for appellees.

**Anderson, J.**, delivered the opinion of the court.

This is a contest over the will of Mrs. Alzada Maude Rena by her six children, appellants, on one side, and her four grandchildren, children of a dead daughter, appellees, on the other. The six children are seeking to uphold the will, and the grandchildren to set it aside on two grounds; mental incapacity to make the will, and undue influence. The cause was heard on bill, answer, and proofs, resulting in a verdict and judgment in favor of the appellees, from which judgment appellants prosecute this appeal.

What purported to be the will of Mrs. Rena was first executed on March 11, 1933, and re-executed on March 23, 1934. The re-execution was caused by the fact that one of her sons, Leslie Rena, was one of the witnesses to the will as executed on March 11, 1933; she was advised that that fact might affect the legality of the will, and that for that reason it should be re-executed without her son as a witness. Accordingly, on the 23d day of March, 1934,

this statement was written at the end of the will: "I, Mrs. Alzada Maude Rena, do hereby re-execute and affirm the above and foregoing Last Will and Testament." This was signed by Mrs. Rena in the presence of the subscribing witnesses and properly witnessed by M. Gerald Burrow and C. A. Jaquess. The will in this form was admitted to probate. Appellees, the four grandchildren, filed their bill contesting the will on the grounds stated, making the six children parties defendant. The allegations of mental incapacity and undue influence were denied.

Appellants contend that there was not sufficient evidence to go to the jury on either of those issues, and therefore they were entitled to a directed verdict. We will consider first whether Mrs. Rena had sufficient mind to make the will. She was almost seventy years of age, and in the fall of 1932 she was stricken with paralysis; she died in September, 1934. The question before the jury was whether or not on March 11, 1933, when she executed the paper claimed to be a will, and on March 23, 1934, when she re-executed it, she was capable mentally of understanding what she was doing. The evidence for appellees tended to show that from the time she was stricken with paralysis until her death she was never of sound and disposing mind.

Witnesses, including a nurse, Mrs. Thompson, testified that she was hysterical; she had laughing spells and crying spells without cause; that she threatened to jump in the lake; that she was under the impression that some one was trying to "steal her money and property;" and that she frequently said that she could not remember, that she could not think; and that in their opinion she was not capable mentally of disposing of her property by will. The evidence for appellees tended to show the contrary.

This was an issue for the jury and not for a directed verdict in favor of either appellees or appellants. There was sufficient evidence to sustain the verdict either way.

It was held in Cox v. Tucker, 133 Miss. 378, 97 So. 721 (a successful contest of a will), that although the evidence in favor of the will was strong, while that against it had many elements of weakness, yet if the latter was not unbelievable, but substantial, the court would let the verdict stand. We are of the opinion that appellees' evidence on this issue was substantial and believable; therefore, it was a question for the jury, and furthermore, it cannot be said that the verdict of the jury was against the overwhelming weight of the evidence and that a new trial should be granted on that ground.

We are of the opinion, however, that the court erred in submitting the issue of undue influence to the jury. Appellants were refused a directed verdict on that issue. There was no substantial evidence tending to show that the will was brought about by undue influence. The testimony of Mrs. Thompson, the nurse, comes nearer this question than that of any other witness, and still it cannot be said that her testimony tends substantially to prove undue influence. Her statement was that Mrs. Rena told her "they did not want her to leave her dead daughter's children anything." There is nothing to show who she meant by "they."

Reversed and remanded.