## Lowrey *v.* Wilkinson, et al.

No. 39328          November 15, 1954          75 So. 2d 643

*Tucker & Badon,* Liberty; *J. G. Anders, Jr.,* Gloster, for appellant.

*Gordon & Gordon,* Liberty, for appellees.

GILLESPIE, J.

This appeal is from a decree upholding the validity of the last will and testament of Mrs. Nora Wilkinson Lauchley Stokes. The appellant, Lillian Russell Lauchley Lowrey, granddaughter and sole heir at law of testatrix, contested the will of Mrs. Stokes on the grounds of undue influence and testamentary capacity. The will devised the estate to two of the brothers of testatrix, Eason Eugene Wilkinson, a life estate in a half interest, with remainder to Pink Hillary Wilkerson or his children, and Pink Hillary Wilkerson, a half interest with remainder of the other half interest. Contestant was left nothing under the will.

The testatrix was an elderly lady when she died. She was first married to one Lauchley and contestant is the sole surviving descendant of the issue of that union. Lauchley died in 1946, and some years later, testatrix married Grady Stokes. In the fall of 1952 testatrix filed suit for divorce against Stokes. Stokes died January 1, 1953. The contested will was made on February 3, 1953.

The proof in behalf of proponents consisted of Mrs. Stokes' doctor, the lawyer who drew the will, one of the subscribing witnesses, and six other witnesses. The effect of this proof was that testatrix was in full control of her mental faculties and clearly understood the nature and effect of her actions in making the will. It also tended to establish that there was no undue influence exercised by Pink Hillary Wilkinson. The court granted proponents a peremptory instruction on both issues of undue influence and testamentary capacity.

The evidence on behalf of contestant was the testimony of twelve witnesses, but the testimony of some of these witnesses is of little value.

Sam P. Thompson, brother-in-law of testatrix, testified that since testatrix had a stroke in 1951, he had helped her out and handled her business while she was in the hospital; that after the stroke, testatrix had been from hospital to hospital and from doctor to doctor, and that since testatrix had the stroke she had said she did not have sense enough to do anything.

Mrs. Sam P. Thompson, sister of testatrix, testified that while the testatrix was in the McComb Hospital, where the will was made, and later at the hospital in Centerville, where she died the following month, she was sick, "mighty sick," and her mind was not good. Other statements of this witness somewhat tend to diminish the value of her testimony.

Mrs. Tubberville, a great niece of testatrix, testified that after seeing and talking with the testatrix and observing her actions while in the McComb Hospital, where the will was made, and after seeing her once or twice every day, she was of the opinion that "her mind was not right, in her talk she rambled about and was not a normal minded person."

Mrs. Wilson, also a great niece, testified that after she observed and talked to testatrix in the McComb Hospital, that in her opinion the mind of testatrix was not like it should have been, "she rambled, she would tell you one thing and then just ramble off to something else."

F. C. Huff, a neighbor of testatrix for 47 years, testified that after testatrix suffered the stroke in 1951, he observed and talked to her and that he formed an opinion as to her mind, and said: "Well, from the way she talked and acted, looked to me like her mind was bad."

Albert Sterling, a cousin of testatrix, visited her four days after the will was signed and while she was still in the McComb Hospital. He testified that he could get no sense out of her and he concluded that she did not know what she was talking about.

Testatrix told Robert Hollingsworth, a lifetime friend and neighbor of testatrix, on the day before the will

was signed: "I am pregnant, and as soon as this is over, I will be all right."

Eason Eugene Wilkerson, one of the proponents, testified for the contestant. He testified that he visited the testatrix before, during, and after she went to the McComb Hospital, and that she did not have any mind, did not know him, and was not capable of independently disposing of her property.

██ We think the lower court was correct in granting the peremptory instruction on the issue of undue influence. No proof was made to establish that issue.

██ In determining whether the chancellor should have granted a peremptory instruction on the question of testamentary capacity, we must assume as true all of the facts which contestant's evidence fairly tends to establish, together with all reasonable inferences to be deduced therefrom. We said in Fortenberry v. Herrington, 188 Miss. 735, 196 So. 232: ██ "It is true that no one of these actions, by itself, would be held to establish his mental incapacity, at the time he executed the will; but taken as a whole, we are of the opinion that although intrinsically weak, there was enough to avoid the scintilla rule, which is held out to be sufficient to raise an issue of fact as to his mental capacity. The peremptory instruction was properly refused, on the specific authority of Rena v. Wells, 175 Miss. 458, 167 So. 620." And what we said in that case is applicable here. We hold that the peremptory instruction on the issue of testamentary capacity should not have been given.

██ Appellant contends that the lower court erred in admitting the testimony of Dr. L. W. Brock, the physician who was attending Mrs. Stokes at the time the will was made. Dr. Brock had already testified as to his opinion of the mental condition of the testatrix prior to any objection being made on the ground that it was privileged. After this objection was made, the court reserved its ruling and no request was ever thereafter

made by appellant for a ruling on the admissibility of the testimony. Furthermore, the doctor was vigorously cross-examined by appellants. Under these circumstances, appellants can not complain. Since this case is being reversed, the lower court can properly dispose of any objection made on a new trial.

Reversed and remanded.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.