**ST. LOUIS SHIPBUILDING & STEEL COMPANY, Appellant,**

v.

**FIRST NATIONAL BANK AND TRUST COMPANY OF VICKSBURG, MISSISSIPPI, Appellee.**

No. 18327.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1961.

George W. Healy, III, New Orleans, La., W. Eugene Davis, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., and Wilder Lucas, St. Louis, Mo., of counsel, for appellant.

Leon Sarpy, New Orleans, La., B. H. Quin, Vicksburg, Miss., Brunini, Everett, Grantham & Quin, William G. Beanland, Chaffe, McCall, Phillips, Burke & Hopkins, New Orleans, La., for appellee.

Before RIVES and WISDOM, Circuit Judges, and DAWKINS, Jr., District Judge.

RIVES, Circuit Judge.

The appellee First National Bank and Trust Company of Vicksburg, Mississippi,[1] filed its libel to foreclose a preferred maritime mortgage on the towboat Seneca, the amount of the mortgage debt remaining unpaid being $24,666.48. The appellant St. Louis Shipbuilding & Steel Company,[2] intervened to claim a superior

1. Hereafter referred to as First National.

2. Hereafter referred to as St. Louis.

lien for repairs, materials furnished and work and labor done upon the Seneca in the total amount of $3,939.50. The net balance of the proceeds of the sale of the Seneca came to only $11,334.85. The district court decreed that that entire amount should be paid to First National on its mortgage debt.[3]

In brief, St. Louis states that " * * * we have no quarrel with the court's findings of facts. The legal conclusions reached by that court are, however, antipodes to what we believe the law on the subject is, and precipitate this appeal." St. Louis then specifies three errors, as follows:

"The District Court erred:

"(1) In holding that title to the Seneca did not pass upon the exercise of the option by DeSoto.

"(2) In holding that the exercise of the option by DeSoto did not affect the charter provisions.

"(3) In holding that a maritime lien for repairs did not attach to the Seneca in favor of St. Louis."

A chronology of the events affecting the title to, and mortgage and claimed lien upon, the Seneca will aid materially in the disposition of this appeal.

(1) On March 5, 1955, Vicksburg Towing Company, Inc.,[4] acquired the Seneca from Canal Barge Company, Inc., under valid bill of sale duly registered with the United States Collector of Customs at Baton Rouge, Louisiana, on March 28, 1955.

(2) On March 31, 1955, Vicksburg executed a mortgage in favor of the Merchants National Bank & Trust Company of Vicksburg [5] on the Seneca to secure the payment of $115,000, which mortgage was recorded on the same day with the Collector of Customs at Baton Rouge. That mortgage carried the customary clause prohibiting liens to the prejudice of the mortgage and was carried on board the vessel among the documents until the cancellation of the mortgage on October 26, 1956.

(3) On October 22, 1955, Vicksburg delivered the Seneca to DeSoto Transportation Company,[6] a Mississippi corporation, under a bareboat charter dated October 15, 1955, containing an option to purchase. The terms of that charter and option are critical to the decision of this case and will be hereafter described in some detail.

(4) On September 21, 1956, DeSoto wrote a letter to Vicksburg notifying the owner as follows:

"Please be advised that we wish to exercise purchase option as set forth in Article 19 of the above mentioned agreement. We will be glad to discuss financial arrangements with you at your convenience."

(5) The charter hire was $2,000 per month, and on August 22, 1956, DeSoto was not in default. Of the $2,000 payment due on that date, DeSoto paid Vicksburg $1,000 on August 27, 1956, after explaining that it was short of funds and that the other $1,000 would be paid at a later date. Vicksburg agreed to receive the balance the following month and made no complaint of default on DeSoto's part. On September 22, 1956, DeSoto mailed to Vicksburg its check for the balance of $1,000. That check was deposited by Vicksburg on September 25, 1956.

(6) St. Louis' claimed lien is on account of the following:

(a) St. Louis performed certain work on the Seneca in St. Louis, Missouri, between the dates of September 23 and September 27, 1956, at the request of L. R. Flowers, an officer and director of DeSoto and master of the vessel, who held himself out to be the owner of the said vessel, at which time the vessel carried on board copy of the charter party.

---

3. The opinion of the district court is reported as First National Bank & Trust Co. of Vicksburg, Mississippi v. The Seneca, D.C.E.D.La.1960, 179 F.Supp. 847.

4. Hereafter referred to as Vicksburg.

5. Hereafter referred as to Merchants National.

6. Hereafter referred to as DeSoto.

(b) St. Louis was furnished with a work order dated September 27, 1956, for two propellers intended for installation in the M/V Seneca. Castings to be installed in connection therewith were ordered on October 12, 1956, which work of installation commenced on January 25, 1957, and was completed on February 15, 1957.

(7) The charter and purchase option contained a provision prohibiting its transfer and assignment without the written consent of the owner, Vicksburg. On October 24, 1956, conditioned upon such consent which was thereafter given, DeSoto did "assign and transfer unto L. R. Flowers and J. W. Jordan, Jr., all of its rights, interests and privileges in and to that certain Bareboat Charter and Purchase Option executed by the Vicksburg Towing Company, Inc., and the undersigned DeSoto Transportation Company on October 10, 1955."

(8) On October 25, 1956, Vicksburg executed and delivered its bill of sale for the Seneca to L. R. Flowers and J. W. Jordan, Jr., which was duly registered with United States Collector of Customs at Baton Rouge on November 2, 1956.

(9) On October 26, 1956, L. R. Flowers and J. W. Jordan, Jr., executed a preferred ship mortgage to secure an indebtedness of $38,500 on the Seneca in favor of libelant, First National, which mortgage was duly registered with the United States Collector of Customs at Baton Rouge. First National's check for the $38,000.00 secured by that mortgage was made payable to the order of Vicksburg and Merchants National and was endorsed by both. On the same date, October 26, 1956, the Merchants National executed its satisfaction of the mortgage held by it on the Seneca [see No. (2) of chain of title, supra], and that satisfaction was registered with the United States Collector of Customs at Baton Rouge on November 2, 1956.

St. Louis insists that title to the Seneca passed to DeSoto upon the giving of its notice of September 21, 1956 [see No. (4) of chain of title, supra]. St Louis argues that the option granted by Vicksburg to DeSoto was a continuing offer which ripened into a binding contract of sale on September 21, 1956, shortly before St. Louis furnished materials and performed work for the repair of the Seneca; that the only thing remaining to be done was payment of the purchase price, the method of which had been agreed upon in advance, and that title passed to DeSoto without actual payment of the purchase price; citing in support of that argument, Garland v. Stewart, 1856, 31 Miss. 314; The United States 219, D.C.E.D.Pa. 1937, 21 F.Supp. 466; 55 Am.Jur., Vendor and Purchaser, Sec. 43.

On its part, First National relies upon the decision of this Court in Reynolds v. Maples, 5 Cir., 1954, 214 F.2d 395, and cites a number of other authorities, noted in the margin.[7]

A study of the authorities relied upon respectively by St. Louis and First National shows, as might be expected, that their application is dependent upon the terms and conditions of the particular contract under consideration. The provisions of the present charter party and option to purchase convince us that title to the Seneca did not pass to DeSoto prior to the payment of the purchase price.

The term of the charter party was "for a period of twelve (12) calendar months unless sooner terminated by mutual agreement or as hereinafter provided or by breech (sic) of this agreement by CHARTERER." The charter party contained detailed provisions prohibiting the charterer DeSoto from imposing

---

7. Cassell v. Backrack, 42 Miss. 56; Beauchamp v. Comfort, 42 Miss. 94; Cole v. Haynes, 216 Miss. 485, 62 So.2d 779, 33 A.L.R.2d 1378; Liverpool & L. & G. Ins. Co. v. Cochran, 77 Miss. 348, 26 So. 932; Morris v. Smith, 184 Miss. 618, 185 So. 548; 55 Am.Jur., Vendor and Purchaser, §§ 27, 28, 29, pp. 492–494; 12 Am.Jur., Contracts, § 27; 46 Am.Jur., Sales, § 56, § 58, § 412; 55 Am.Jur., Vendor and Purchaser, § 38, § 41, § 43; 77 C.J.S. Sales §§ 247, 262a, 264.

liens on the Seneca and requiring it to keep the charter party and the Seneca's papers on board the towboat, and to exhibit them to all persons having business with the towboat which might give rights to any maritime or other lien, and to conspicuously display in the pilot house a large and legible printed sign or notice to the effect that the Seneca is the property of Vicksburg, and that no person has a right to place any lien or encumbrance on it. Article XIX grants the option to purchase and is here quoted in full:

'ARTICLE XIX. During the term of this Charter Party OWNER does hereby grant to CHARTERER and option to purchase the TOWBOAT in its then condition, together with all anchors, cables, rigging, tackle, apparel, furniture, and all other necessaries thereunto appertaining and belonging, an inventory of which is attached hereto and made a part hereof, for the sum of SIXTY TWO THOUSAND FIVE HUNDRED and NO/100 ($62,500.00) DOLLARS provided that the CHARTERER be not then in default under the terms of the Charter Party. In the event CHARTERER exercises the hereinabove described option to purchase during or at the termination of this Charter Party then and in that event CHARTERER shall be entitled to a credit on said purchase price of one hundred (100%) per cent of the amount of charter hire therefore (sic) paid at the time of the exercise of this option. In order to exercise such option CHARTERER shall give written notice to OWNER of such exercise not later than thirty (30) days before the expiration of twelve (12) months following the date of delivery of said TOWBOAT as hereinabove described.

"In the event CHARTERER exercises this option to purchase OWNER agrees to accept in full payment of the balance due for the purchase of said TOWBOAT CHARTERER'S promissory note with the principle

payable in thirty-six (36) equal monthly installments, to bear interest at the rate of five (5%) per cent per annum, together with twenty (20%) per cent attorneys' fees, the said note to contain the usual and customary accelaration (sic) and other clauses secured by a maritime mortgage on the oil screw 'SENECA' said mortgage to contain the usual and customary clauses."

As indicated in the second sentence, the option is *"described"* in the first sentence of Article XIX, supra and is simply "for the sum of $62,500.00." That means we think, that the $62,500 shall either be paid or the balance thereof shall be secured by the mortgage described in the last paragraph of Article XIX. While the written notice required in the third sentence of Article XIX must be given not later than 30 days before the expiration of 12 months following the date of delivery of the Seneca, the second sentence shows that the option to purchase may be exercised "during or at the termination of this charter party," and that the charterer shall be entitled to a credit of the amount of charter hire "paid at the time of the exercise of this option." Very clearly, if, as in this case, a part of the charter hire is paid subsequent to the written notice but prior to the payment of the purchase price, the charterer is entitled to credit of such amount on the purchase price.

The provision in the third sentence for the giving of written notice "of such exercise," despite its language, provides, we think, for notice of intention to exercise rather than for actual exercise of the option. Whether the notice is an exercise of the option or is a notice of intention to exercise the option is to be determined not so much by its name, or by the manner of reference of the district court or of First National's expert attorney-witness, as by the nature of the obligations which it imposes. In at least three instruments the parties themselves construed the written notice to be a notice of mere intention to exercise: 1. DeSoto's letter to Vicksburg of September 21, 1956

[see No. (4) of chain of title, supra] stated simply, "we wish to exercise purchase option. * * * We will be glad to discuss financial arrangements with you * * *." That letter notice did not constitute a mutual agreement terminating the charter, especially so since it left the financial arrangements open for discussion. 2. The assignment from DeSoto to L. R. Flowers and J. W. Jordan, Jr., on October 24, 1956 [see No. (7) of chain of title, supra], was of all DeSoto's rights, et cetera, in and to the "bareboat charter and purchase option," thus treating the option as still in existence and unexercised. 3. The bill of sale to Flowers and Jordan of October 25, 1956 [see No. (8) of chain of title, supra] was not from DeSoto but from Vicksburg, thus recognizing that title to the Seneca had not passed from Vicksburg to De-Soto.

The charter party had carefully protected against the imposition of liens on the Seneca during the term of the charter. The option Article XIX, quoted supra, had provided for the securing of any balance of the purchase price by a mortgage to Vicksburg, meaning obviously a first mortgage. In view of those carefully drafted provisions, it would be strange, indeed, if, as contended by St. Louis, a hiatus or loophole had been permitted to remain between the time of the written notice as to the exercise of the option and the payment or securing of the purchase price during which the charterer DeSoto could suffer liens to be imposed upon the vessel. The option in the present case requires that the purchase price be paid or secured when the option is exercised and, clearly, tender of such payment or security is essential in order to extinguish the charter party.

St. Louis cites and relies upon several cases holding that an exercise of an option to purchase changes the status of the parties from lessor and lessee to vendor and vendee and terminates the lease or charter and its lien prohibition clauses.[8] In each of the decisions cited by St. Louis there was an actual exercise of the option in question and not, as in this case, a mere notice of intention to exercise the option.

We hold that the option to purchase was not exercised upon the giving of the written notice of September 21, 1956, but was exercised later upon the payment of the purchase price; that title to the Seneca never did pass to DeSoto; that the written notice of intention to exercise the option did not terminate the charter provisions prohibiting the imposition of liens; and that a maritime lien for repairs did not attach to the Seneca in favor of St. Louis.

Its claimed lien not having attached, there is no basis for St. Louis' argument that it did not *lose* its lien, because of its failure to inquire as to ownership and authority of Flowers to order repairs and thereby to impose a lien upon the Seneca, since inquiry would have revealed nothing.[9] So far as that is important, it clearly appears that, if St. Louis had inquired as to Flower's authority before making the repairs, it would have found on board the vessel the then existing first mortgage in favor of the Merchants National and the charter party expressly prohibiting the imposition of liens on the towboat.

The judgment is

Affirmed.

8. St. Louis cites and relies on Larsen v. Sjogren, 1951, 67 Wyo. 447, 226 P.2d 177; Detwiler v. Capone, 1947, 357 Pa. 495, 55 A.2d 380, 384; 502 Park Avenue Corporation v. Delmonica Hotel, Inc., 1928, 132 Misc. 502, 686, 230 N.Y.S. 262; City Service Oil Co. v. Viering, 1949, 404 Ill. 538, 89 N.E.2d 392; Perkins v. Swank, 1870, 43 Miss. 349; and 32 Am. Jur., Landlord and Tenant, § 300.

9. Citing, Gilmore & Black, The Law of Admiralty, 1957, p. 568; and John Baizley Iron Works v. United States, D.C. E.D.Pa.1925, 6 F.2d 25, 26.