**UNITED STATES of America,**
**Libelant,**
**v.**
**AMERICAN GAS SCREW FRANZ JOSEPH, Respondent,**
**v.**
**PACIFIC VEGETABLE OIL CORPORATION, a California corporation,**
**Intervening Libelant.**
**Civ. No. A–32–60.**

United States District Court
D. Alaska,
at Anchorage.

Nov. 2, 1962.

582

Warren C. Colver, U. S. Atty., by James R. Clouse, Jr., Asst. U. S. Atty., for libellant.

Burr, Boney & Pease, by Theodore M. Pease, Jr., Anchorage, Alaska, for intervening libellant.

KILKENNY, District Judge.

Libel by the United States against the American Gas Screw "Franz Joseph" to forfeit that vessel to libelant under pertinent provisions of 46 U.S.C. § 325.[1]

The vessel was permanently licensed for the purpose of a mackerel fishery and on or about October 29, 1957, was operated by one Campbell on the waters of Prince William Sound, at which time the vessel was engaged in the coastwide trade. Engaging in such coastwide trade constituted an employment in a trade other than that for which the vessel was licensed and made her subject to forfeiture under the provisions of the foregoing section. The libel was filed against the vessel on account of said violation on June 17, 1960. Thereafter, intervening libels were filed by the owner and others, which libels were subsequently dismissed on motion of the said intervenors. There remains for determination the issues created by the petition of intervention of the libelant Pacific Vegetable Oil Corporation, herein called Pacific. On or about September 22, 1948, Joe Balestrieri—Bering Sea Codfish Company signed a certain financing agreement with Pacific and, on June 15, 1949, in order to secure repayment of funds advanced under such financing agreement, the said Codfish Company executed and delivered to Pacific a certain preferred mortgage on the vessel "Franz Joseph," which mortgage secured payment of a substantial sum of money, the principal amount of the mortgage being $163,142.28. The mortgage was due on demand, and nothing has been paid thereon.

On January 12, 1960, a supplemental agreement was entered into between Pa-

1. 46 U.S.C. § 325 provides, among other things:
    "Whenever any licensed vessel * * * is employed in any other trade than that for which she is licensed, * * * such vessel with her tackle, apparel and furniture, and the cargo, found on board her, shall be forfeited. * * *"

cific and the Codfish Company renewing the original debt and mortgage.

We must keep in mind that the violation of the license by the vessel was on October 29, 1957, that she became subject to forfeiture on that date and that Pacific had no knowledge of the violation.

Libelant does not question the validity of the original preferred mortgage, but contends that the vessel was forfeited to the Government on seizure and that the rights of Pacific are barred by the statute of limitations of either Alaska or California and by laches. The facts are undisputed.

The parties to the mortgage were residents and citizens of the state of California and the mortgage was made, executed and delivered in said state. This mortgage was drafted, delivered and recorded pursuant to the provisions of 46 U.S.C. § 922, it having the preferred status given to such mortgages under the provisions of 46 U.S.C. § 953.

■■ It is generally held that state legislation pertaining to mortgages is not applicable to those issued under the Ship Mortgage Act, which Act is complete in itself. Merchants & Marine Bank v. The T. E. Wells, 289 F.2d 188 (5 Cir., 1961). The legislation was enacted by Congress to encourage the investment of capital in the American Merchant Marine. First National Bank & Trust Co. of Vicksburg v. The Seneca, 179 F.Supp. 847 (D.C. E.D.La., 1960), aff'd, 5 Cir., 287 F.2d 366. The legislation is complete even to the extent that it provides for mortgage foreclosure proceedings *in rem* by a suit in admiralty in the United States District Court. This jurisdiction is exclusive.[2]

The Ship Mortgage Act,[3] under which Pacific secured its preferred lien, has a specific provision prohibiting forfeiture. Since there is no claim that Pacific au-

thorized, consented or conspired to effect the illegal act, failure or omission which constituted the violation, this provision would be dispositive of the litigation, if it were not for libelant's claim that laches destroyed Pacific's preferred mortgage prior to the violation.

■ The liberal purpose of the legislation to stabilize and promote the financing of mortgage security on ships is ably explained and presented in Detroit Trust Company v. The Barlum, 293 U.S. 21, 38, 55 S.Ct. 31, 79 L.Ed. 176. There is nothing in the legislation which would require the mortgage to be foreclosed at maturity or within a reasonable time thereafter or at any particular time. The Favorite, 120 F.2d 899, 902 (2 Cir., 1941). In the light of the fact that consideration must be given to Federal legislation, rather than state statutes, I am of the opinion that the statutes of limitation of the states of California and Alaska do not apply, even as a yardstick to appropriate the doctrine of laches.

■ Does the simple fact that intervening libelant has failed to require payments of either principal or interest on its preferred mortgage for a period of approximately 10 years (date of violation) give rise to the application of the doctrine of laches and thus bar Pacific's right to foreclose? It is urged that The Owyhee, 66 F.2d 399 (2 Cir., 1933) is authority for the proposition that a court of admiralty, in applying the doctrine of laches, will use as a guidepost, for setting time periods in connection with the enforcement of liens, the state lien statutes which were "superseded but not repealed by the Federal Mortgage Act." Gilmore & Black, The Law of Admiralty, 630.

The Owyhee and its satellites, Nolte v. Hudson Navigation Co., 297 F. 758 (2 Cir., 1924), and The Portchester, 56 F.

---

2.  46 U.S.C. § 951.

3.  46 U.S.C. § 961(b).
    *       *       *       *       *
    "(b) The interest of the mortgagee in a vessel of the United States covered by a mortgage, shall not be terminated by

the forfeiture of the vessel for a violation of any law of the United States, unless the mortgagee authorized, consented, or conspired to effect the illegal act, failure, or omission which constituted such violation. * * *"

2d 579 (2 Cir., 1932), have not escaped criticism.[4] They have been charged with injecting a curious transfusion of life into state statutes in the face of comprehensive Federal legislation designed to overcome the bewildering complexities of the old state-federal structure. Benedict, Admiralty, 299–300 (6th Ed.); Gilmore & Black, supra, 625–630. As previously mentioned, the Ship Mortgage Act, 46 U. S.C. § 974(2), provides that laches may be recognized as a defense against the enforcement of a mortgage lien.[5]

■ Here we have a situation where the parties, by a solemn writing, agreed to waive the statute of limitations.[6] The preferred mortgage dated the 15th day of June, 1949, specifically refers to the said financing agreement. Under California law, the waiver in writing of the statute of limitations is valid and enforceable. State Loan & Trust Co. v. Cochran, 130 Cal. 245, 62 P. 466; Brownrigg v. De Frees, 196 Cal. 534, 238 P. 714. Under the law of that state a waiver even to the extent of 99 years is enforceable. Brownrigg v. De Frees, supra. An unlimited waiver, such as we have in this case, is valid, Dexter v. Pierson, Sup., 1 P.2d 435, aff'd on rehearing, 214 Cal. 247, 4 P.2d 932. Even though the California statutes do not apply, Pacific would have an absolute right to rely on the written waiver of any statute of limitations and the language of the waiver. I believe the best statement of the rule is that no arbitrary or fixed period of time should be adopted by the courts of admiralty for the invocation of the doctrine of laches and that the delay which might defeat a suit to foreclose a lien must in each case depend on the peculiar equitable circumstances of each

case. The Key City, 14 Wall. 653, 81 U.S. 653, 20 L.Ed. 896.

In January, 1960, the mortgagor, by formal written agreement, renewed the preferred mortgage, in which renewal the mortgagees again waived any rights or benefits conferred by the statute of limitations. This renewal agreement demonstrates that the mortgagor had, over the course of these years, been doing considerable financing with Pacific, not only as to the preferred mortgage on the "Franz Joseph," but also mortgages on another vessel and real and personal property in San Francisco, California, and Cordova, Alaska.

■ All circumstances bearing on the issue of laches should be considered and, where no prejudice has ensued from the mere passage of time, there should be no bar to relief. Gardner v. Panama Railway Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31; Czaplicki v. S. S. Hoegh Silvercloud, 351 U.S. 525, 76 S.Ct. 946, 100 L. Ed. 1387; Pure Oil Co. v. Snipes, 293 F. 2d 60, 69 (5 Cir., 1961). Laches encompasses an area far beyond the mere lapse of time. The lapse of time is essential, but to bar relief there must be prejudicial harm. The harm of which the courts speak is not that which one might lose if the case is decided against him, but harm which has subjected him to a disadvantage in asserting and establishing his claimed right or defense. Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 261 F.2d 861, 865 (5 Cir., 1958); Gardner v. Panama Railway Co., supra, 342 U.S. p. 30, 72 S.Ct. 12, 96 L. Ed. 31. In Vega v. Malula, 291 F.2d 415, 418, (5 Cir., 1961), Judge Brown emphasizes that the courts have paid entirely too much attention to the element of

---

4. Merchants & Marine Bank v. The T. E. Wells, 289 F.2d 188, 191 (5 Cir., 1961).

5. But see The Red Lion, 22 F.2d 329 (D.C.E.D.N.Y.1927) holding that this section does not apply to preferred mortgages.

6. Article VII of Financing Agreement. "The party of the first part hereby waives the pleading of any and all stat-

utes of limitation as a defense to the enforcement of any and all demands, claims, payments or obligations or any part or parts thereof, mentioned herein, or arising from the premises or promises herein, whether incurred presently, before, or after the date hereof."

delay, at the expense of the equally important element of harm. The very existence of laches is a question directed primarily to the discretion of the trial court in which it is absolutely essential that the equities of the respective parties be considered. Gardner v. Panama Railway Co., supra; The Key City, supra.

Libelant relies on The Harpoon II, 71 F.Supp. 1022 (D.C.Mass.1947), holding that the commission of the forbidden act operates to transfer the title at the time of the commission of the act so as to avoid all subsequent sales, even to an innocent purchaser, The Sterling, 65 F.2d 439 (5 Cir., 1933), holding that the forfeiture occurs on the commission of the forbidden act, and The Rethalulew, 51 F. 2d 646 (9 Cir., 1931), which is in agreement with the conclusions reached in The Harpoon and The Sterling. However, these cases have no application unless Pacific lost its preferred mortgage lien prior to the claimed forfeiture. Libelant concedes that the forfeiture is not enforceable against a valid preferred mortgage. 46 U.S.C. § 961(b). There is no evidence that libelant in any way changed its position or was harmed by reason of the lapse of time here involved.

While there is no constitutional objection to the enforcement of a forfeiture, United States v. One Ford Coupe Automobile, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279, forfeitures are not favored in the law and they should be enforced only when within both the letter and the spirit of the law. United States v. One 1936 Model Ford Coach (1939) 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249; United States v. Mattio, 17 F.2d 879 (9 Cir., 1927).

The lapse of time, under the facts of this case, does not call for the application of the equitable doctrine of laches. After a careful examination and consideration of the entire record and all of the inferences to be drawn therefrom, I, in the exercise of my discretion, unequivocally hold that Pacific was not guilty of laches under any authoritative definition of that doctrine.

The agreed facts and this opinion shall stand as my findings. Proctors for intervening libelant shall draft, prepare and present an appropriate decree of foreclosure.