JOHN PETERSEN, PLAINTIFF-RESPONDENT, v. THE PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK, DEFENDANT-APPELLANT.

Argued October 19, 1934—Decided January 10, 1935.

For the plaintiff-respondent, *Pearce R. Franklin, Luke A. Kiernan, Jr.*

For the defendant-appellant, *Frank G. Turner.*

The opinion of the court was delivered by

CASE, J.  Having previously obtained a $10,000 judgment against Michael King for injuries received in an automobile accident, plaintiff sued The Preferred Accident Insurance Company of New York, appellant herein, as King's insurer and got judgment for $5,797.72, the maximum recoverable under the policy.

Two questions were fully tried out and put to the jury in the instant suit: First, was Michael King an insured under the policy? and, second, if an insured, did he forfeit the indemnification because of lack of co-operation with the insurer in the defense of the action against him?  The named insured was the owner, Blanche King, who was not an occupant of the car at the time of the accident and who, in the action by plaintiff against her and her husband, Michael King, received a directed verdict in her favor.  Michael King, with plaintiff and one Fred Petersen, was in the car when the accident happened.

Appellant first complains of the striking, on motion before trial, of three separate defenses.  The first of the struck defenses was that King was not the operator of the car.  The operation of the car by King was charged in the damage suit and was adjudicated affirmatively, otherwise judgment could not have gone against him.  True, the appellant was

not a party to that action in the sense of being named in the record and served with process, but it made the investigation, prepared the case for trial, and, by its attorney, actually conducted the trial. Its services were not limited to the interests of Blanche King, the named assured, because after she was, by directed verdict, out of the suit, appellant's attorney proceeded, without disclaiming, to sum up on behalf of Michael King. The defending of an assured by the company was, from the company's standpoint, both a duty and a right; a duty under the policy provision section II, 4, a, wherein the company agreed to defend, and a right under section V C, wherein was imposed as a condition of recovery against the company that unless there was a tripartite agreement to the contrary there must have been a final judgment against the assured in an action defended by the company. The policy also contained the usual right of subrogation by the company in the event of making payment. Appellant, in defending the damage suit for the Kings, was also making its own defense because a judgment against either of the Kings was potentially, to the extent of the coverage, a judgment against the insurer. The reality of that assertion is emphatically demonstrated by the present judgment. If King, after the recovery against him, had paid the judgment and as an insured had then turned to the appellant for reimbursement, could the latter, having in its capacity as King's insurer prepared and tried the case in which King's operation of the car had been determined as a prerequisite to the judgment, deny liability upon the ground that King had not, after all, operated the car? We think not. The insurer was interested in the subject-matter of the suit. It had and exercised the right to make defense, control the proceedings, examine and cross-examine witnesses. Further, it had the right to appeal from the judgment. The identity of the insurer with the assured was too complete, and the control by the insurer over the lawsuit and the trial, particularly in determining what proofs should go in and what be kept out, too great to permit of that cleavage of interest.

The court below struck the defense upon the theory that

the question involved was *res adjudicata.* The policy not only was, by its terms, made to conform with chapter 116 (*Pamph. L.* 1929, *p.* 195), sometimes known as the "Financial Responsibility act," but in addition contained the following provision:

"The liability of the company under this policy shall become absolute whenever loss or damage covered by the policy occurs, and the satisfaction by the assured of a final judgment for such loss or damage shall not be a condition precedent to the right or duty of the company to make payment on account of such loss or damage. Upon the recovery of a final judgment against the assured for any such loss or damage the judgment creditor shall be entitled to have the insurance provided by this endorsement applied to the satisfaction of the judgment."

We perceive ño sound reason why a company which so indemnifies against casualty liability and which in pursuance of its policy obligation undertakes to, and does, defend an action against an insured, assuming the dominating management of the defense and acting generally the part of a defendant in the comprehensive manner hereinbefore outlined (15 *R. C. L.* 1009, § 483), should not, as to the determination of an essential fact against its insured in the action for damages, be later, in a suit against it on the judgment, conclusively estopped from asserting to the contrary thereof; in similitude of, if not entirely upon, the doctrine of *res adjudicata* as adopted by this court in *In re Walsh's Estate,* 80 *N. J. Eq.* 565 (at *p.* 569). Appellant was not to be heard, in the instant action, to deny that King had been the driver of the car. The defense was properly struck.

The second struck defense was that King was not operating the automobile with the permission of his wife. The policy provides that "the unqualified word 'assured' includes not only the named assured but any other person or organization while legally using any such automobile * * * provided that such use is with the permission of the named assured. who, if an individual, may give such permission through an adult member of his household other than a chauf-

feur or domestic servant * * *." Notwithstanding the striking of the separate answer appellant tried out the subject-matter thereof and introduced testimony from which it appears that not only was King under no prohibition against using the car during the period in question, but also, and affirmatively, that he had general permission from his wife to use the car. The appellant suffered no harm from the ruling.

The third defense struck by the ruling was designed, according to appellant's assertion, to permit proof that a *capias ad respondendum* was issued against King, as a result of which the latter was taken into custody for some undisclosed period. No supporting argument is given. It is conceded that the judgment was and is wholly unpaid. The fact, if it be a fact, that King was arrested had no relevancy. The portions of the policy already quoted demonstrate that the obligation of the appellant was to pay, to the extent of the policy coverage, a money judgment obtained against its insured. The court ruled correctly.

The point mainly stressed by the appellant at the oral argument was that the trial court erred in refusing to direct a verdict on the ground that Michael King had, as an insured, failed to co-operate with the defendant in the case. The policy obligation was that "the assured shall co-operate with the company and, upon the company's request, shall assist in effecting settlement, securing evidence, and the attendance of witnesses * * *." Following the accident King made a statement that he had been driving when the accident happened. Before the trial of the plaintiff's damage suit, he informed the insurance company that the driver had in truth been Fred Petersen and he so testified at that trial and at the one resulting in the judgment now under appeal. His explanation was that Fred Petersen had been driving without a license, the latter's license having been revoked for cause, and that immediately following the accident King, on the request of Fred Petersen and to save him from the consequences of driving without a license, had agreed to take the blame. The jury in the damage suit evidently did not believe

King's testimony that he was not driving for it brought in a verdict against him. Was the truth in the first or in the second story? It is possible that King's zeal to help his case outran the truth. On the other hand, if the fact lay in the later version, it may be said that he co-operated by coming forward with the truth. In all other respects he seems to have complied with the requests of the company. The question was properly left to the jury for determination.

We have examined the remainder of appellant's points and find no error stated therein.

Judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.