PELLERIN LAUNDRY MACHINE SALES, INC., et al. *v.* JEFFCOATS

No. 42878        March 2, 1964        161 So. 2d 190

*Satterfield, Shell, Williams & Buford, Cary E. Bufkin,* Jackson, for appellants.

*Collins & Tew,* Laurel, for appellee.

KYLE, P. J.

This case is before us on appeal by Pellerin Laundry Machine Sales, Incorporated, a Louisiana Corporation, and Morton H. Mayo, defendants in the court below, from a judgment entered by the Circuit Court of the Second Judicial District of Jones County in favor of Mrs. Annie Ree Jeffcoats, plaintiff, in an action for damages for personal injuries alleged to have been sustained by the plaintiff in an automobile accident which occurred on October 5, 1959. From that judgment the defendants have prosecuted this appeal.

The plaintiff's declaration was filed on October 15, 1962.

The plaintiff alleged in her declaration that on October 5, 1959, at approximately 12:30 P.M. She was operating a 1959 Chevrolet automobile in a general westerly direction on U. S. Highway No. 84, approximately 5½ miles west of Laurel; that the defendant Morton H. Mayo, an employee of the defendant Pellerin Laundry Machine Sales, Inc., was operating a Chevrolet automobile in a general easterly direction on said highway, at a highly dangerous negligent and unlawful rate of speed, was not keeping a proper lookout for others using the highway, and did not have his vehicle under proper control, and while operating said vehicle in a grossly negligent manner negligently ran said vehicle over the center line of the highway into the plaintiff's proper traffic lane and into the vehicle occupied by the plaintiff, with great force and violence, throwing

the plaintiff forward in such manner as to cause her to suffer severe and permanent injuries to her back, including fracture of the vertebrae, and injuries to her neck and head and her right leg. The plaintiff further alleged that as a result of the defendant's negligence she had suffered great pain of body and mind and had been permanently injured; that as a result of her injuries she had been compelled to expend $1400 for medical and hospital bills. The plaintiff therefore sued and demanded judgment against the defendant for the sum of $125,000.

The defendants filed their answer to the plaintiff's declaration to December 17, 1962. In their answer the defendant denied the allegations of negligence contained in the plaintiff's declaration. The defendants admitted that the collision complained of occurred, but the defendants averred in their answer that the collision resulted wholly and solely from the negligence of the plaintiff, not as a result of any negligence on the part of the defendants, or either of them. The defendants, as an affirmative defense, alleged that the plaintiff, at the time of the collision and immediately prior thereto, was operating her vehicle in a highly reckless, dangerous and unlawful manner, in that, the main travelled portion of the roadway was wet and slick, and the plaintiff was operating her automobile at a speed in excess of that which a prudent driver would have operated a vehicle under similar circumstances; that as a result of the plaintiff's negligence in operating her automobile at an excessive rate of speed as she entered a curve in the roadway immediately prior to the point of impact she lost control of her vehicle, when it began to spin in a counterclockwise rotation from her lane of travel across and into the defendant Mayo's lane of travel, thereby causing her vehicle to crash into and against the defendant Mayo's vehicle at a time when the defendant Mayo had driven his vehicle to his right and

had virtually removed his vehicle from his lane of travel in an effort to avoid an impending collision, and that the collision and plaintiff's alleged injuries, if any, resulted wholly and solely from her own negligence.

The case was tried at the January 1963 term of the court. The jury returned a verdict in favor of the plaintiff against both defendants in the sum of $50,000, and a judgment was entered in favor of the plaintiff and against the defendants for that amount. The defendants' motion for a new trial was overruled, and from the judgment entered against them the defendants have prosecuted this appeal.

The appellants have assigned and argued two main points as grounds for reversal of the judgment of the lower court: (1) That the verdict of the jury and the judgment entered thereon are contrary to the overwhelming weight of the evidence; and (2) that the verdict of the jury was so excessive as to evince bias, passion and prejudice on the part of the jury, and the trial court erred in not setting aside the verdict and ordering a new trial on all issues.

It is not necessary that we discuss at length the evidence offered on behalf of the respective parties. The drivers of the two motor vehicles were the only eyewitnesses to the accident.

The plaintiff, Mrs. Annie Ree Jeffcoats, testified that she was driving westwardly toward her home at a rate of speed of about 25 miles per hour when she first saw Mr. Mayo's automobile approaching from the west about 100 yards in front of her. The Mayo car was swerving, coming toward her on her side of the road at a rate of speed of about 70 or 75 miles per hour. She turned toward the center line just enough to avoid a head-on collision, and the Mayo car struck the right side of her car just below the hood and the front door and broke the seat that she was sitting on. When the two cars came to rest after the collision her car was headed back

eastward toward Laurel. The plaintiff testified that she was seriously injured as a result of the impact; that she had a gash across the top of her head, and a small one lower down on her scalp; that her right arm was cut and the muscles in her neck were pulled; that she had a crushed vertebra and a sprained ankle. Her watch was broken and her clothes were soiled and bloody. She was bleeding badly from her head. She was carried to the Laurel Community Hospital, and Dr. Howard L. Boone treated her for her injuries. On cross-examination the plaintiff denied that at the moment when she saw the Mayo car approaching from the west her car began to spin in counterclockwise fashion over into the lane of travel of the Mayo vehicle.

The defendant Morton H. Mayo testified that he was driving eastwardly on Highway No. 84 at a rate of speed of about 50 or 55 miles an hour. It had been raining intermittently most of the morning, and for that reason he had slowed down a little under the normal highway speed. He observed Mrs. Jeffcoats' vehicle when it was between 50 and 100 yards from him. Mrs. Jeffcoats was driving at a rate of speed of approximately 50 or 60 miles per hour in the north or west-bound travel lane of the highway. Immediately after he saw Mrs. Jeffcoats' car approaching, the car ran off the north side of the highway and the driver lost control of the car, and the car began to spin counterclockwise down the highway toward the Mayo car. Mayo stated that he applied his brakes immediately and had two wheels of his car completely off the pavement and onto the shoulder on the south side of the highway when Mrs. Jeffcoats' car ran into him. Mrs. Jeffcoats' car was still spinning at the time it struck the left front of the Mayo car. Mayo stated, and photographs of the scene of the accident which appear in the record show, that after the impact the Mayo car was turned completely around and was headed westward off the highway, and Mrs.

Jeffcoats' car was headed eastward approximately in the center of the highway.

██ █ It can be readily seen from what we have stated above that the questions of negligence and contributory negligence on the part of the drivers of the two vehicles were questions for the jury to determine. The judgment against the defendant will therefore be affirmed on the question of liability.

We come now to the consideration of the appellants' second assignment of error.

The plaintiff, after describing her injuries, as stated above testified that she remained in the hospital 38 days under treatment of Dr. Boone; that she suffered great pain, and was still suffering pain at the time of the trial; that she was still troubled with headaches and pain in her back, and she still suffered from the sprained ankle. She stated that she was unable to perform her household duties and work her garden and sell vegetables at the Home Demonstration Curb Market at Laurel two days each week, as she had been accustomed to do. She stated that her hospital and medical bills amounted to $1400. The plaintiff was asked to state the number of doctors she had been to see and to give their names. She gave the names of five doctors and the physical therapist at the Laurel Bone and Joint Clinic.

Dr. Howard L. Boone testified that he treated Mrs. Jeffcoats for the injuries suffered by her as a result of the automobile accident on October 5, 1959, at the Jones County Community Hospital. She was perfectly conscious when he saw her at the hospital after her injury. She had three lacerations of her scalp, a compound fracture of the third thoracic vertebra, and severe sprains of the neck and ankle, also a muscle sprain of the back. The doctor stated that he sutured the lacerations on the plaintiff's scalp and gave her general supportive treatment. She had what is commonly referred to as a whiplash injury. She was placed in traction

for her neck with a weight attached to it, and was given medicine to relieve her pain. She was discharged from the hospital on November 8, 1959. The doctor stated that he had seen the plaintiff several times since that date. He had recommended that she wear a cervical collar because of the injury to her neck, and had prescribed various drugs to relieve pain and relax the muscles. He stated that the plaintiff had developed phlebitis in the right ankle and leg for which he prescribed an elastic hose. That was in January 1960. He saw her one more time in January and then again in February, March and April.

The doctor was asked what was the condition of the plaintiff's neck at the time of the trial. His answer was, ''She still has pain. Still has considerable limitation of motion of her neck.'' He was then asked, ''And as far as her neck injury is concerned, what, in your opinion, does the future hold for her, Doctor?'' His answer was, ''Well that would be hard to say, but the period of — it has been so long since she has had the injury that I doubt that she will get much better than she is now.'' The doctor stated that her right ankle was enlarged, larger than normal, larger than her left ankle. She had had no glandular trouble, or phlebitis previously to her injury. The doctor thought she would continue to have pain in the future, not only in her neck, but also in her ankle. The last time he prescribed medication for her was on January 22. It was medicine ''to eliminate fluids out of the tissue.'' He did not prescribe any pain relief for her at that time. On cross-examination the doctor was asked, ''When was the last time * * * that you prescribed any medication for this alleged pain?'' His answer was, ''February 24, 1962.'' The doctor was asked if he had observed Mrs. Jeffcoats in her normal activities, when she came to see him at the clinic, etc. His answer was that she was able to walk normally and naturally. None of the other doctors

whose names were mentioned by the appellee were called to testify as witnesses in the case. The record shows that the plaintiff was 51 years of age at the time of her injury.

■■■ We think the amount of the verdict is so grossly excessive, in view of the nature of the plaintiff's injuries and the medical testimony, as to evince bias and prejudice on the part of the jury, ■■ ■ and the judgment appealed from will be reversed and a new trial granted for that reason, unless the appellee agrees to enter a remittitur of $20,000 within 20 days from the date of the judgment of this Court. If the appellee agrees to enter such remittitur, the judgment of the lower court will be affirmed for $30,000, with interest thereon from the date of the judgment appealed from at the rate of six percent per annum; otherwise the judgment against the appellants will be reversed and the case remanded for a new trial on the issue of damages only.

Two minor points have been assigned and argued as grounds for reversal of the judgment of the lower court neither of which requires a detailed discussion by us in this opinion.

■■■ There is no merit in the appellants' contention that the court erred in permitting the appellee, in her rebuttal testimony, to state whether or not she told the highway patrolman, when he visited her at the hospital, that she did not know how the accident occurred.

■■■ The other point argued by the appellants' attorneys relates to alleged errors in three instructions granted to the plaintiff, which appear on pages 22, 23, and 24 of the record. The errors complained of in the instructions which appear on pages 22 and 24 of the record are not of sufficient importance to require any detailed discussion. But we think the court erred in granting the plaintiff's instruction which appears on page 23 of the record, in the form in which the instruc-

tion appears in the record. The clause "or so as to endanger the life and limb of any person", appearing in lines 5 and 6 of the instruction, should have read, "or so as *not* to endanger the life and limb of any person." But the word "not" was obviously omitted through inadvertence, and we do not think that the omission of the word constitutes such error as to require a reversal of the judgment of the lower court.

Affirmed with remittitur.

*Ethridge, Gillespie, Rodgers and Patterson, JJ.,* concur.