EMPLOYERS MUTUAL CASUALTY COMPANY, et al. *v.* AINSWORTH

No. 42998          May 25, 1964          164 So. 2d 412

810

*Davidson & Beach,* Jackson, for appellant.

*Melvin, Melvin & Melvin,* Laurel, for appellee.

GILLESPIE, J.

This is an appeal from a judgment in a garnishment proceeding wherein the judgment creditor in an automobile accident case filed garnishment proceedings against the liability insurer of the judgment debtor. Issue was joined between the judgment creditor, H. K. Ainsworth, appellee herein, and Employers Mutual Casualty Company, appellant herein, on whether the cooperation clause in an automobile liability policy was violated. This issue was presented to the jury and the verdict was for the judgment creditor and the insurance company appealed to this Court.

Appellee obtained judgment for $6,000 against Mrs. J. W. (Agnes A.) McCraw, his daughter, in his suit in circuit court charging that his daughter negligently operated an automobile in which he was riding resulting in an accident and serious injuries to him. Appellee had a writ of garnishment served upon Employers Mutual Casualty Company, who had theretofore issued its automobile liability policy to J. W. McCraw, under which Mrs. J. W. (Agnes A.) McCraw was protected. Appellee contested the answer in which appellant charged that Mrs. J. W. McCraw failed to cooperate with the insurer.

The insurance company contends that the verdict was contrary to the overwhelming weight of the credible evidence; and that the trial court erred in rendering

judgment against the insurance company in the sum of $6,000, or $1,000 in excess of the policy limits.

The policy obligated insurance company "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death resulting therefrom, hereafter called bodily injury, sustained by any person." The policy also obligated the insurance company to ". . . defend any suit alleging such bodily injury or property damage, and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation or settlement of any claim it deems expedient."

Under the terms of this policy Mrs. J. W. (Agnes A.) McCraw was insured and entitled to all the protection afforded the named insured.

The policy contained a cooperation clause as follows: "The insured shall cooperate with the company and, upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."

On November 15, 1960, while the policy was in effect, Mrs. M. W. McCraw left her home in Laurel to go to Oak Grove, Louisiana, driving her husband's 1959 Vauxhall automobile described in the policy. Her father, appellee, accompanied her. When they reached a point on Highway No. 585, near Oak Grove, Louisiana, and as they approached a sharp right-hand curve in the two-lane blacktop road, a truck came around the curve

from the opposite direction. Mrs. McCraw turned the automobile to the left, ran off the road and turned over. Appellee sustained serious injuries.

Thereafter H. K. Ainsworth filed suit in the Circuit Court of Jones County against Mrs. J. W. McCraw, seeking damages for the injuries sustained by him in the aforesaid accident.

Mr. T. E. Davidson of Jackson, Mississippi, an attorney and state representative of the insurance company, employed Mr. David C. Welch, an attorney of Laurel, Mississippi, to assist in defending the suit. On April 29, 1961, Mr. Davidson met Mr. and Mrs. McCraw in the law offices of Mr. Welch for the purpose of discussing the case filed against Mrs. McCraw by appellee. On the same day the answer of Mrs. McCraw was filed by the said attorneys. The case went to trial in March 1962.

The attorney for appellee, the plaintiff, called Mrs. McCraw as an adverse witness and she testified that she was driving 45 miles an hour, and volunteered the statement that she was going too fast to approach the curve; that she was driving in the center of the road, which would put her partly in the path of the oncoming truck; that she lost control of the car; stepped on the accelerator instead of the brake; and went down the dump and turned over two or three times. As will be hereafter shown, this testimony was in direct conflict with her purported written statement. When this occured, Attorneys Davidson and Welch requested the court's permission to examine Mrs. McCraw in the absence of the jury. This request was granted and Mr. Welch questioned her about the purported written statement given on November 23, 1960, and she denied that she had signed any of the pages except the first two. She admitted signing her father's statement as a witness but denied knowing its contents. Mrs. McCraw was questioned about the meeting in the office of Mr.

Welch on April 29, 1961, and she testified that she told Mr. Welch the statement attributed to her was incorrect.

Mr. Welch advised the court that "we are taken by surprise, if your honor, please." The court then suggested there was a conflict of interest between Mrs. McCraw and Messers. Davidson and Welch. He stated that he assumed said attorneys would withdraw at this point, and Mr. Welch said, "That is exactly correct, we wish to withdraw for failure on the part of the witness to cooperate with us and giving us inconsistent statements." The trial judge then said to the witness: "Mrs. McCraw, it is apparent to the court that as between you and your attorneys, there is a definite conflict of interest, and they cannot represent you in the cause because their attitude shows they can't do it. Under these circumstances, it would be unethical for them to proceed any further in the case, and it would be my duty not to let them because it is obvious that this conflict of interests exists. You are entitled to have counsel in the matter and the case is started, I don't know whether you want to get counsel or not, or whether you want to proceed without counsel."

Mrs. McCraw said she knew nothing about court and did not know what he was talking about when he said "counsel," or "to proceed without counsel." Whereupon the judge said: "The court would be required to give a directed verdict against you because of the fact that your testimony shows negligence in driving the automobile. All I can advise you is that it is the duty of the court to release these attorneys, or say that they do not represent you, because of the obvious conflict of interest. I don't know how else to tell you than I have told you. If you want time to get an attorney you may do so."

Mrs. McCraw did not request a continuance for the purpose of obtaining an attorney and the case proceeded to trial, resulting in a judgment for $6,000.

Thereafter the garnishment proceedings involved on this appeal were instituted. The insurance company answered that it was not indebted. The answer was contested by appellee and in response thereto the insurance company charged that Mrs. McCraw failed to comply with the terms of the cooperation clause of the policy.

The insurance company introduced Corporal Virgil Johns, a trouper with the Louisiana State Police, who testified he investigated the accident involved, and that Mrs. McCraw told him she was traveling north on the highway when she came to a sharp curve where she met a truck traveling south on the inside of a curve, which was on her side of the road; to prevent a head-on collision she pulled to the left to miss the truck, lost control of the vehicle and ran into the lefthand ditch. The court refused to allow this testimony to be presented to the jury although it was tendered by the insurance company and developed in the absence of the jury. It will be noted that this version of the accident is in accord with the purported statement of Mrs. McCraw.

James H. Guyse, employee of Crawford Adjustment Agency, testified that he contacted Mrs. McCraw for the purpose of determining the facts of the accident in the course of an investigation for the insurance company, and she told him how the accident occurred and he reduced her oral statement to writing which was signed by her on each page. It consisted of five pages, the last being a diagram. The statement was also witnessed by Mrs. McCraw's son, J. D. McCraw. The diagram attached to the statement, which is in ink, purports to show the highway where the accident occurred, and shows Mrs. McCraw's vehicle at a point before it reached the curve, opposite which is an arrow with words, "about 30 m.p.h." It shows Mrs. McCraw's vehicle near the curve on her right-hand side of the road two car lengths from the other vehicle meeting her on its left-hand side of the road directly in front

of the car driven by Mrs. McCraw. It also shows a line indicating that Mrs. McCraw turned her vehicle to the left out of the path of the oncoming truck so that her vehicle left the highway. Mr. Guyse also testified that Mrs. McCraw put her initials, "A.A.Mc" on one page of the statement to indicate an interlineation, and this was placed in the written statement at the suggestion of Mrs. McCraw so that it would be complete.

The first four pages of Mrs. McCraw's purported statement is in ink and contains considerable details about her trip to Louisiana leading up to the accident and what happened thereafter. The first page (which she and her son admitted signing) contains the following:

"I was travelling north on Highway 585 about four and four tenths miles South of Goodwill, La., and travelling about twenty five to thirty miles per hour when I met an unknown truck and trailer on my side of the road in a steep curve. I had to leave the highway and my car turned over side way two or three times it seemed to me. . . . I told Daddy to hold on, he was going to hit us and cut to my left to miss the truck."

And on page two (which she and her son admitted signing) the statement said: "I knew I was to make the sharp right turn and had reduced my speed. I could have made the curve without any trouble at all." In short, the statement exonerated Mrs. McCraw from negligence in connection with the accident and placed the fault on the driver of the truck.

Guyse also testified that on December 6, 1960, after appellee returned to Mrs. McCraw's home from the hospital, he took a statement from appellee consisting of two pages signed by appellee and Agnes McCraw. This statement was substantially in accord with the purported statement of Mrs. McCraw as to the speed Mrs. McCraw was driving, her position on the highway, and the position of the truck.

Guyse stated that on another occasion he went to Mrs. McCraw's residence and discussed the accident in a very limited way with her and she had changed her story as to what happened and referred him to appellee's attorney.

Mr. Ludlow Baynard, an examiner of questioned documents of Baton Rouge, Louisiana, testified to his qualifications, and after identifying enlarged specimens of the known handwriting of Agnes A. McCraw and of the signatures to the last three pages of her purported statement, said that in his opinion all of the signatures on said statement were made by the same person. This witness testified that he could not say absolutely that Mrs. McCraw signed all pages of the statement, but it was his opinion that she did. These enlargements have been sent up to this Court along with the original of the purported statement, and it appears to us that all of the pages of this statement were signed by the same person, although we do not undertake to make any finding based on our examination of these signatures.

Mr. T. E. Davidson, attorney for the insurance company, testified that he associated Mr. David Welch to defend the suit of H. K. Ainsworth against Mrs. J. W. McCraw, and went to Laurel on April 29, 1961, after suit had been filed, and met with Mr. Welch, Mrs. McCraw and her husband, J. W. McCraw, in the law offices of Welch, Gibbes and Graves; that he explained to Mr. and Mrs. McCraw that they were the attorneys who would defend her in the suit and the purpose of the meeting was to discuss the declaration and the allegations contained therein. He stated the first thing they did was to go over the declaration (the declaration charged that Mrs. McCraw was driving the automobile at a high and dangerous rate of speed on the wrong side of the road, etc.), and she commented that the charges were ridiculous and were not true. He stated that he

then read to her the statement purportedly given by her to Mr. Guyse on November 23, 1960, and she stated that it was a true and correct statement with the exception of the distance between her car and the truck when she first noticed the truck. The witness stated that he was testifying from handwritten notes made during the discussion with Mrs. McCraw in Mr. Welch's office on April 29, 1961. He stated that Mrs. McCraw told him she felt she was not to blame for the accident or for the injuries to her father. Davidson stated that based upon the information contained in the statement of Mrs. McCraw, and the information gained in the conference on April 29, 1961, he prepared the answer to the suit of H. K. Ainsworth and that the first time he had any knowledge or information that Mrs. McCraw would testify differently from her written statement was when she was called by appellee's attorney as an adverse witness.

Mr. David C. Welch gave substantially the same testimony as Mr. Davidson concerning the meeting with Mr. and Mrs. McCraw in his office on April 29, 1961. Mr. Welch testified that the first time he had heard the version of the accident given by Mrs. McCraw at the trial of the suit against her by her father was when she was called as an adverse witness, and Mr. Welch stated that he was taken completely by surprise.

At this point the insurance company rested its case.

Mr. J. D. McCraw, the son of Mrs. J. W. McCraw, was introduced on behalf of appellee. He stated that he was present at the hospital on November 23, 1960, when Mr. Guyse came to the hospital to see his mother with reference to the accident; that when he got there Mr. Guyse was writing up a statement and after about ten minutes, Mr. Guyse said that he needed the statement "to help get the thing straightened out." Witness testified that he signed only two pages and that he saw his mother sign only two; that sometime thereafter he

saw Mr. Guyse at his mother's home taking a statement from appellee. He said appellee did not read the statement and could not read it because his eyesight was gone.

Mr. J. W. McCraw testified that he remembered Mr. Guyse coming to his home to see his wife on two occasions; that Guyse asked about Mr. Ainsworth — how he was getting along, and told Mrs. McCraw that the matter had gone to court and Mr. Welch and Mr. Davidson would be her lawyers. He stated that he was at the meeting in the law office of Mr. Welch on April 29, 1961, and when the papers were read to his wife, she told them they were not correct. He had reference to the statement they claimed she had signed. He said that his wife said, "Mr. Welch, I want to cooperate with you but that is not correct." Then the lawyer said, "Well, that's all then," and he and his wife left and she did not attempt to point out what was incorrect about the statement and neither Mr. Welch nor Mr. Davidson asked her what part of the statement was incorrect.

Mrs. J. W. (Agnes A.) McCraw testified that Mr. Guyse came to the hospital at a time when she was busy working with her father; that he stated he came there as an adjuster for the insurance company; that she was not in a condition to talk to him but she tried, and he wrote two pages which she signed. She did not have anything to do with the writing or the words placed on the paper; she did not read the two pages; it was a statement about the wreck, and Mr. Guyse asked her only two questions. Thereafter her father went home but was still confined to the bed. Mr. Guyse came to her home and she was fixing dinner, but came out of the kitchen and at Mr. Guyse's request signed a paper (referring to the statement purported to have been given by appellee). She said she did not read that statement. She said thereafter Mr. Guyse

and Mr. Black came to her home to ask how her father was getting along, and denied she told them to see Mr. Melvin if they wanted any information about the lawsuit. She said at a meeting in Mr. Welch's office on April 29, 1961, Mr. Davidson read the papers and she said, "Mr. Welch, that is not correct." She said she told them the statement said it was her car and she told them it was her husband's car (the transcript of the testimony in the damage suit shows that Mrs. McCraw there testified that the Vauxhall car was hers). She said there was only part of two pages of the statement that she signed, and she told Mr. Welch it was not correct, and Mr. Davidson said, "That is all." Mrs. McCraw said that she and her husband then went home. She denied she told Mr. Welch the allegations of the declaration were ridiculous. Nowhere in her testimony does she claim to have told Mr. Welch or Mr. Davidson, or anyone else connected with the insurance company, the version of the facts she testified to as an adverse witness in the damage suit trial.

■■■ When an insurance company seeks to avoid the coverage of an insurance policy on the ground of breach of the cooperation clause, it is an affirmative defense. The insurance company carries the burden of proof and must establish the fact of failure of cooperation by a preponderance of the evidence. And the determination of the question of lack of cooperation is one of fact to be determined by the jury. Appleman, Automobile Liability Insurance, pp. 263-264.

■■ Cooperation of the insured with the insurer, required by an automobile liability insurance policy, implies, not an abstract conformity to ideal conduct, but a pragmatic question to be determined in each case in the light of the particular facts and circumstances. 7 Am. Jur. 2d, Automobile Liability Insurance, Sec. 177, p. 510.

"Under the co-operation clause of an automobile liability insurance policy, it is the duty of the insured to give a full, frank, and complete statement of the cause, conditions, and circumstances of the accident and the conduct of the parties at the time, in order that the insurer may properly present its defense, or determine whether there is a genuine defense. Also, although a technical or inconsequential misstatement to the insurer is immaterial, and although an unintentional and accidental mistake in the statement of facts, made by the insured under an automobile liability policy, especially if afterward seasonably corrected, does not establish such a lack of co-operation as will create a defense for the insurer, the intentional furnishing of false information of a material nature either before or at the trial is a breach of the co-operation clause. To a like effect, there is a breach of the clause where the insured untruthfully or collusively assumes liability for the accident, or misrepresents the facts to the prejudice of the insurer." 7 Am. Jur. 2d, Automobile Liability Insurance, Sec. 178, p. 512.

A withdrawal of a misstatement promptly, prior to trial, and in time not to prejudice the insurer does not necessarily constitute failure to cooperate. Ibid., Sec. 179, p. 513.

The relationship of insured to the injured party will not, of itself, raise an inference of bad faith or of collusion between the parties; but the authorities agree that in evaluating credibility the fact that close family relationship tends to cause the insured to sympathize with those to whom the insured may be liable, should be taken into account. Such tendency is a matter of common knowledge. Appleman, Automobile Liability Insurance, p. 267; 7 Am. Jur. 2d, Automobile Insurance, Sec. 177, p. 511.

The right of the parties to a jury trial of the issues involved in this case is vouchsafed by law, as

already stated. In exercising the constitutionally ordained duty to set aside a verdict when it is contrary to the overwhelming weight of the evidence, this Court has a responsibility and a power that must be exercised with conscious self restraint and great caution. But its duty to act when it should is just as compelling as the duty not to overturn a jury verdict when it should not. In Moak v. Black, 230 Miss. 337, 92 So. 2d 845, this Court said that the power of the Court to review the evidence and set aside the verdict of the jury when it is against the overwhelming weight of the evidence is a necessary incident to the right of trial by jury. Every Mississippi Constitution since the first one was adopted in 1817 has guaranteed the right of trial by jury. The rule that it is the duty of the Court to set aside a verdict when it is against the overwhelming weight of the evidence has prevailed since the establishment of the constitutional judicial system in this State, and existed at common law. Universal Truck Loading Co. v. Taylor, 178 Miss. 143, 172 So. 756.

■■■ In Williams Yellow Pine Co. v. Henley, 155 Miss. 893, 125 So. 552, the Court reviewed the fundamental principles which govern in determining whether a verdict of a jury should be set aside and in doing so made it clear that a verdict will be set aside on the grounds that it is not supported by reasonably believable proof, or is against the overwhelming weight of the evidence, only when it so appears "in such a convincing way as to be fairly inescapable upon the record as presented." The Court has the duty to assure litigants the right to trial by jury without abridgment and at the same time protect litigants against a jury that is partial, biased or prejudiced.

The Court has never attempted to prescribe any elaborate formula, adequate to meet all cases, as to when a verdict will be considered contrary to the overwhelming weight of the evidence. Faulkner v. Middleton, 186

Miss. 355, 188 So. 565. In that case the Court said that the Constitution itself imposes on the court the duty to set aside a verdict when it is against the overwhelming weight of the evidence, and this Court must apply to all the evidence, considered together, a calm, deliberate and impersonal judgment founded in the lessons of long experience and observation in the lives of men in all their various ranks, and measure thence according to sound human standards of reasonable probabilities. The opinion then continued as follows:

"But in measuring the probabilities, the character and cogency of the evidence, its reasonableness, its harmony or inharmony with the undisputed facts, or with the facts of common knowledge, or with the laws of nature, the character and intelligence of the witnesses, their several attitudes, and the like—not the number of witnesses for the respective sides — must be among the tests. The problem is not to be reduced to any such a simple process as counting the witnesses, although this in some cases, as for instance in Mobile & O. Railroad Co. v. Bennett, 127 Miss. 413, 90 So. 113, may have some bearing. At last, the question is: Can the Court say with confidence that the verdict is manifestly against all reasonable probability; that manifestly it has not responded to reason upon the evidence produced? Unless the Court can so say, the verdict must stand, for otherwise there would be only a matter of conflict in the evidence, in which case, if the issues have been fairly submitted to the jury on proper instructions, the verdict is irreversible. Goodyear, etc. Co. v. Anderson, 171 Miss. 530, 536, 157 So. 700; Cox v. Tucker, 133 Miss. 378, 385, 97 So. 721; and see the long list of cases from this Court gathered under Note 16 in 5 C.J.S., Appeal and Error, p. 616, Sec. 1648."

Throughout our history the Court has found it necessary from time to time to set aside verdicts of the jury in order to preserve the integrity of the right to trial

by jury and to see to it that litigants have the kind of jury trial contemplated by the Constitution, for every Constitutional Convention has adopted the same language used in the Constitution of 1817 with full knowledge that in the cases under the Constitution of 1817 the Court construed the guarantee of the right to jury trial as subject to the rule that a verdict would be set aside when "found palpably against the preponderance of evidence." Sims v. McIntyre, 8 S. & M. 324. In civil cases the Court has applied this rule in almost every kind of case. In Moak v. Black, 230 Miss. 337, 92 So. 2d 845, the jury exonerated a defendant charged with the negligent killing of a child in a traffic accident and the Court held it should be set aside as being against the overwhelming weight of the evidence. In Gordon v. Lee, 208 Miss. 21, 43 So. 2d 665, and in Green v. Hatcher, 236 Miss. 830, 105 So. 2d 624, the Court set aside verdicts because they were so grossly inadequate as to evince bias, passion or prejudice. In Miss. State Highway Commission v. Valentine, 239 Miss. 890, 124 So. 2d 690, the Court set aside the verdict in an eminent domain case as being so grossly excessive as to evince bias, passion and prejudice. And in Pellerin Laundry Machine Sales, Inc. v. Jeffcoats (Miss.), 161 So. 2d 190, the Court set aside a verdict in a personal injury case as being so excessive as to evince bias and prejudice on the part of the jury. Many cases could be added to each of these catagories. The rule has been applied to protect all classes of litigants from injustices that sometimes result from abuses and excesses. Thus it is that courts insure the preservation, integrity, and vitality of the constitutionally guaranteed right to trial by jury.

Viewed in the frame of the constitutional duty placed upon the Court, we hold that the verdict is against the overwhelming weight of the evidence.

The case of Employers Liability Assurance Corp. v. Bodron, 65 F. 539, is not in point. In that case there was no finding that the verdict was against the overwhelming weight of the evidence. The opinion stated that there was not much difference between the insured's written statement and his statement at the trial. In the case at bar, Mrs. McCraw's written statement (also her alleged statement to the State Trouper immediately after the accident, and the statements Attorneys Welch and Davidson said she made on April 29, 1961, affirming her written statement) was completely different from her testimony given when appellee's attorney called her as an adverse witness.

The remaining question is whether the trial court erred in rendering judgment against the insurance company for $1,000 in excess of the policy coverage.

██ ██ If Mrs. McCraw cooperated with the insurance company as required by the policy, the attorneys should not have raised the question of non-cooperation, resulting in the judge advising them they could no longer represent Mrs. McCraw, and such unjustifiable refusal to defend and the untimely withdrawal from the defense would entitle appellee to recover all damages resulting therefrom, including the amount of the judgment above policy limits. So. Farm Bureau Casualty Insurance Co. v. Logan, 238 Miss. 580, 119 So. 2d 268. On the other hand, if Mrs. McCraw failed to cooperate as required by the policy, then the attorneys were justified in raising the question of non-cooperation and in withdrawing from the defense under the circumstances. The question then is one for the jury, the same as the main issue involving the cooperation clause.

Reversed and remanded.

All Justices concur, except *Rodgers, J.* and *Lee, C. J.,* who dissent.

Rodgers, J., dissenting:

For several reasons which I shall now discuss, I cannot agree with the majority opinion in this case. In the outset, we have recognized the rule that the question as to whether or not an insured, or a person protected by the contract, failed to cooperate with the insurer in compliance with the cooperation clause of the policy is an affirmative defense and the burden of establishing it is with the insurer, and that it is a question of fact for the determination of the jury. I pause here to point out this rule is so well-established that it may be considered universal.[1]

A jury in the instant case has passed upon the question as to whether or not the person protected by the policy, namely Mrs. J. W. McCraw, has failed to carry out one of the conditions of the policy, that is to say, the "cooperation clause." The jury determined under proper instructions, that the insurer was liable. The Employers Mutual Casualty Company (hereinafter called Insurance Company) based its claim upon the allegation that the person protected by the policy did not cooperate with the Insurance Company because Mrs. J. W. McCraw told an agent of the Insurance Company shortly after the accident that she was not to blame for the accident, and gave the adjuster a signed statement of facts indicating that the accident was brought about by the negligence of an unknown truck driver. Later, however, Mrs. McGraw testified that she attempted to tell the attorneys for the Insurance Company that the statement she gave to the adjuster was incorrect, and pointed out instances wherein the statement was incorrect. The witness testified that instead of determining wherein the statement was incorrect, the attorneys broke off the interrogation and terminated the interview. The attorneys were at the time acting in a dual capacity. They not only represented the In-

surance Company, they also represented the person protected by the policy. The contractual right to conduct the defense of an insured, or a person protected by the policy, is a valuable right to an insurance company, but this right, as in this case, is accompanied by a correlative requirement that the insurer defend the insured against all actions brought against her on the allegation of facts and circumstances covered by the policy, even though such suit may be groundless, false, or fraudulent. 29A, Am. Jur., Insurance, §1448, p. 562. Moreover, the dual capacity of attorneys representing persons covered by insurance policies does not mean that an attorney can be diligent in favor of one client to the detriment of another. It therefore appears to me that since the attorneys were told that the statement taken by the adjuster was incorrect, they might have determined at that time wherein it was incorrect, to the end that they could have *at that time* advised Mrs. J. W. McCraw that she should employ attorneys, and they could have released her so that she might have done so, rather than retain the right to handle the case and continue to represent her until after the jury was impanelled and she was confronted with a sudden demand to make a decision in court, after having been cross-examined by her own attorneys.

The defense of the Insurance Company in this case is, that the person protected by the insurance policy did not cooperate with them in the defense of the suit against her, in that she did not tell them the truth as to how the accident occurred. As a general rule, misstatements by the insured, (or person covered by the policy), seasonably corrected or withdrawn prior to the trial of the action against the insured, do not constitute a violation or breach of a cooperation clause of a liability policy, even where the misstatement is persisted in until shortly before the trial of the action

against the insured. See 29A, Am. Jur., Insurance, §1477, p. 587.

This rule has been established in many cases, some of which are here cited. In the case of General Accident Fire & Life Assurance Corporation v. Rinnert, (U. S. 5th Cir. Ct. of Appeals, 1948), 170 F. 2d 440, insured's daughter falsely stated to insured's attorney and adjuster that she was driving insured's automobile at the time of the accident, when in fact she had permitted a friend to drive. Five days after the accident, she stated the true facts to the attorney for the insurance company. The Court, following the Alabama law, held that ''To deny recovery in this case as a matter of law is to disregard the question of fact presented by the evidence as to whether Virginia Woodson's false statement, quickly corrected, did, as a matter of law, constitute material non-cooperation. * * * Furthermore, after a lapse of only five days, a correction was made. The misstatement was corrected long prior to the trial of the causes which resulted in the judgments; the insurance company had the facts and was in position to settle if it saw fit to settle, to defend if it saw fit to defend, as it did.'' The Court then said ''we agree with the lower court that there was cooperation within the terms of the policy''.

In Lindsey v. Gulf Insurance Company, 7 So. 2d 757 (La. App.) the defense of non-cooperation was disallowed when an initial deliberate misstatement was corrected in advance of trial so as not to prejudice the defense of the cause.

In the case of State Farm Mutual Automobile Insurance Company v. Brown, 243 N.Y.S. 2d 825, the Court recognized and viewed the insurer's defense of non-cooperation in the ''frame of the State's emphasized solicitude for the victims of automobile accidents.'' It, nevertheless, pointed out the statement of the Court in the case of Wallace v. Universal Insurance

Co., Inc., 18 A.D. 2d 121, 123, 238 N.Y.S. 2d 379, 381, wherein it is said: ''Liability insurance is intended not only to indemnify the assured, but also to protect members of the public who may be injured through negligence.'' The Court held in Brown, supra, that where the insured concealed from the insurer the fact that insured was driving at the time of the accident was not a breach of the cooperation clause of the policy, where insured reported the accident fully and truthfully on the day after the accident, except to say that another person, (in fact non-existent), was driving his automobile in which the insured was a passenger.

In the case of Marley v. Bankers' Indemnity Company, 166 A. 350 (R.I. 1933), the insured Beatrice Cohen went to the office of the insurance company's attorney and signed a statement giving her version of an accident covered by the policy. Two days prior to the day of the trial, at the request of the defendant's attorney, she went to his office and gave a written version of the accident which differed from the original statement signed by her. The attorney for the insurance company wrote her a letter in which he advised her that the company would defend her but reserved the right to disclaim all liability under the policy. Her testimony at the trial was different from her original statement; thereafter, when claim was instituted against the insurance company, it defended on the ground the insured did not cooperate with insurer. The Court said ''The insured is not complying with the terms of the policy when he makes a false or misleading statement as to his part in the accident and then testifies in court to the contrary. But the mere fact that his testimony in court under oath and subject to cross-examination differs from his previous statement made to the insurer does not warrant the conclusion as a matter of law that the co-operative clause of his policy had been violated. * * * The trial justice having found on a

question of fact that there was not sufficient evidence of failure to co-operate to free the defendant from liability on its policy, his decision must stand unless from the record before us it appears it was clearly wrong. * * * An examination of the record convinces us that the trial justice was not in error.''

In the case of Standard Accident Insurance Company of Detroit, Michigan v. Vivian Winget, 34 A. L. R. 2d 250, 197 F. 2d 97, the Court said: ''It is true in the instant case, the fact of the misstatement in the original deposition is undisputed. But before the deposition was released, a correction was made and the true version given. There is room in law, as in religion, for the *locus penitentiae*. The insured was entitled to explain the circumstances under which the change was made. And the trial court properly left it to the jury to determine whether this statement, withdrawn before it had become frozen in the record of the deposition, constituted a lack of cooperation.'' The Annotation (34 A. L. R. 2d) following this case, points out on page 267 that ''Even where the misstatement is persisted in until shortly before the trial of the action against the insured, no breach has been found, where the insurer failed to show that the delay in telling the truth had prejudiced it.'' On page 275 of the same Annotation, it is pointed out that ''Without indicating which of the insured's statements was a misstatement, it has been held proper to allow the issue of a breach of the cooperation clause to be determined by the jury, where there were discrepancies in the insured's statements as to the speed he was traveling prior to the accident.''

In the case of Petersen v. Preferred Accident Insurance Company of New York, 176 A. 897 (N. J. App.), the Court pointed out that the question whether insured, who, after accident, stated he had been driving, but before trial informed insurer that another had driven

the automobile at the time of the accident, cooperated with insurer, was a question for the jury.

The foregoing authorities have convinced me, that since the question, as to whether or not the person protected by the policy cooperated with the insurance company, is not only a question of fact to be determined by the jury, but in the instant case, the fact that the insured attempted to correct the original statement is sufficient evidence on which to base a jury verdict that the insured did in fact cooperate with the insurer.

We mentioned in the majority opinion the expression in Broussard, et ux v. Broussard, 84 So. 2d 899 (La. App.), to the effect that in evaluating credibility, the fact that close family relationship tends to cause the insured to sympathize with those to whom the insured may be liable, should be taken into account. We said such tendency is a matter of common knowledge, but may be considered in determining whether the verdict is contrary to the overwhelming weight of the evidence. In the Broussard case, however, the Court also said: "On the other hand, the court must recognize that insurance policies protect not only the insured, but the general public, and insurers should not escape their liability except through conduct on the part of their insured which materially prejudices them." It has been held as a general rule that a lack of good faith is not to be inferred merely from relationship between the insured and the person injured. 5A Am. Jur., Automobile Insurance, §134 at p. 137; Anno. 72 A. L. R. 1456; Anno. 139 A. L. R. 791.

In the case of State Auto Mutual Insurance Company v. York, 104 F. 2d 730 (writ of cert. denied 308 U. S. 591), the Court said: "A confusing element is introduced into the case by reason of the fact that the husband's interest is almost necessarily enlisted on the side of his wife in a suit against him in which any recovery will benefit her and will be paid by the insurance company

and not by him; but the company has ample means to protect itself from the danger of a situation of this sort by excluding from the coverage of its policy liability to the wife or other members of insured's family. Where for business reasons it elects to cover a risk of this character, it cannot complain when liability is asserted, nor should it be permitted to shield itself by the argument that the ordinary friendly relationship existing between members of the family furnishes of itself evidence of fraud and collusion. In such a case where members of the family corruptly conspire and work together to secure a recovery not justified by the facts, the policy should be and is avoided; but it is not avoided merely because the sympathy of insured is with the insured members of his family rather than with the company which insured him, or because he does not suspend during the litigation ordinary friendly intercourse with his family.'' Mississippi has heretofore decided to follow the common-law rule which prevents one spouse from filing a tort suit against the other. See Austin v. Austin, 136 Miss. 61, 100 So. 591, 33 A. L. R. 1388; McLaurin v. McLaurin Furniture Company, 166 Miss. 180, 146 So. 877; Scales v. Scales, 168 Miss. 439, 151 So. 551.

I believe we should not extend by inference the exemptions to sue under an insurance policy or disparage the claim of an injured member of the insured's family simply because an insured is more interested in his family than in the insurer. I am of the opinion that the insurance company has the right, if it so desires, to cover members of a family in a liability policy, and having done so, it should not be heard to object to paying the beneficiary in accordance with its contract.

Finally, I am of the opinion that the verdict of the jury should be upheld, because, according to the testimony of the insured, which the jury had a right to believe, the attorneys for the Insurance Company knew

that insured had changed her statement, and if they knew, they should not have continued to assert their right to control the defense of the insured under the circumstances until a time when she was brought into court and cross-examined, and her testimony refuted by the attorneys whose duty it was to represent her interest. At least, it was a question for the jury whether their alleged actions were sufficient to estop the Insurance Company from asserting that the insured failed to cooperate with the insurer. Without belaboring this point, I have set out below the authorities which have influenced my opinion.[2]

[1] See Lindsey v. Gulf Insurance Company, 7 So. 2d 757 (La. Ct. of App.); Employers' Liability Assurance Corporation, Ltd., of London, England v. Bodron, 65 F. 2d 539; Annis v. Annis, 84 N. W. 256; Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. 2d 855, 50 A.L.R. 2d 108; Johnson v. Johnson, 228 Minn. 282, 37 N. W. 2d 1; Anno. 34 A. L. R. 2d 267; Bassi v. Bassi, 165 Minn. 100, 205 N. W. 947; Pacific Indemnity Company v. Ted McDonald, 107 F. 2d 446, 131 A. L. R. 208; General Casualty & Surety Company v. Kierstead, 67 F. 2d 523; United States Fidelity & Guaranty Company v. Redmond, 221 Ala. 349, 129 So. 15; 7 Am. Jur. 2d., Automobile Insurance, §176 at p. 509; Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, Part 2, § 4059 at p. 73; 5A, Am. Jur., Automobile Insurance, §134 at p. 138; United States Fidelity and Guaranty Company v. Snite, 106 Fla. 702, 143 So. 615; Marley v. Bankers' Indemnity Insurance Company, 166 A. 350; Petersen v. Preferred Accident Insurance Company of New York, 176 A. 897; Employers' Liability Assurance Corp., Ltd. of London, England v. Nosser, 70 F. 2d 516 (Miss.); Employers Insurance Company of Alabama, Inc. v. Brock, 233 Ala. 551, 172 So. 671;

Anno. 98 A. L. R. 1468; Anno. 139 A. L. R. 777; State Farm Mutual Automobile Insurance Company v. Brown, 243 N.Y.S. 2d 825.

[1] See Anno. 139 A. L. R. 802; Anno. 72 A. L. R. 1492; Anno. 98 A. L. R. 1480; 7 Am. Jur. 2d., Automobile Insurance, §§ 183, 184, pp. 520, 521; Allstate Insurance Company v. Keller, 17 Ill. App. 2d 44, 149 N. E. 2d 482, 70 A. L. R. 2d 1190; Ornellas v. Moynihan, 16 S. W. 2d 1007 (Mo. 1929); 45 C. J. S., Insurance, §934, p. 1061; Commercial Casualty Insurance Company v. Tri-State Transit Company of Louisiana, 190 Miss. 560, 1 So. 2d 221; United States Fidelity and Guaranty Company v. Yazoo Cooperage Company, 157 Miss. 27, 127 So. 579; 5A Am. Jur., Automobile Insurance, §141, p. 143; Southern Farm Bureau Casualty Insurance Company v. Logan, 238 Miss. 580, 119 So. 2d 268.

*Lee, C. J.,* joins in this dissent.