PATTERSON, Justice.
This is an appeal by Mrs. Dorthula H. Russell, her husband, H. H. Russell, the plaintiff below, having died pending this appeal from a judgment of the Circuit Court of Copiah County where the jury returned a verdict for the defendants, Cook Construction Company and Miller Transporters, Inc.
The plaintiff, H. H. Russell, brought suit for damages against the co-defendants alleging that their concurrent negligence was the proximate cause of the injuries which he received while employed as an inspector with the Mississippi State Highway Department. The plaintiff alleged that on August 24, 1966, he fractured his right arm, was cut and bruised, and suffered a hernia when he fell from a weighing platform. The negligence charged was that certain employees of Cook Construction Company and Miller Transporters, Inc., while filling a truck with lime in close proximity to the platform where the plaintiff was engaged about his duties, carelessly permitted the lime to overflow, causing a cloud of lime dust to cover the area. The plaintiff further alleged that while fleeing the lime dust he stumbled over a wooden plank which was attached to the platform and was injured in the resultant fall.
The issues before the Court on appeal are whether the verdict of the jury was contrary to the overwhelming weight of the evidence and whether certain instructions granted the defendants were proper.
Consideration of the first issue requires an analysis of the evidence introduced for consideration by the jury.
The first witness, H. H. Russell, described the procedures followed in loading the lime truck. The employee of Miller Transporters, Inc. would attach the hose from the stationary lime storage tank to *915 the bottom of the empty tank on the transport truck. He would then ascend to the top of the truck tank and open a hatch so that air might escape as the tank was filled from underneath with powdered lime. The employee of Cook Construction Company, who had charge of the stationary lime storage tank, would then start the motor on the stationary tank, creating air pressure which would force the lime from the stationary tank into the truck tank.
Russell testified that as he was filling out a ticket in the weighing shed the truck which was being filled with lime overflowed, causing a large cloud of lime dust to cover the immediate area. A fellow employee of the plaintiff, who was the first to see the cloud of lime dust, shouted a warning to the plaintiff to run, and in his attempt to escape the plaintiff tripped over a wooden plank and fell to the ground. He testified that his entire body was covered with lime dust after he fell and that “I had to get up and take my handkerchief and clean my glasses and wipe the lime out of my eyes before I could even see.”
Julian Curtis, a fellow employee of the plaintiff, testified that he saw the cloud of lime dust and that it was he who shouted “run” to the plaintiff, and that he escaped the dust without injury. He stated that he saw the plaintiff as he began to run and later noticed him lying on the ground, but he did not observe the fall.
Ernest Rainey, an employee of Cook who operated the lime pump, was called as a witness for the plaintiff and testified that he did not recall any unusual incident on August 24, 1966. He did state that on a number of occasions he had seen lime trucks overflow sometimes causing a large cloud of thick white dust to cover a small area.
Fred Martin, the truck driver employee of Miller, was introduced by Miller and testified that when his truck was being filled, he would stand on top of the tank and look through an open hatch, and when the lime was eight to ten inches from the top, he would “holler” down to Cook’s employee to cut off the pump. He testified that normally a small amount of lime dust would escape from the open hatch at all times during the filling of the tank truck, enough to cover a fifteen or twenty-foot area. He stated that he never saw a lime truck overflow and that on the date in question, approximately two years prior to the trial, he had no knowledge of any such occurrence or any resulting injury. With regard to the alleged occurrence, he testified as follows:
Q. On this date of August 24, 1966 do you have any knowledge of any occurrence taking place whereby your tank was overflowed with lime and lime spread out over the whole area around your truck and the storage tank and the scales ?
A. No, sir.
Q. Was any complaint made to you on August 24th while you were on Cook’s job about lime coming out of the truck, overflowing from the truck, and Mr. Russell or anyone getting hurt?
A. No, sir.

Q. Now, every time you had a, including this date, that you had your truck loaded with lime from the storage tank, as I understand you, you say you would get up on top of your tank truck at the time the operation started?
A. Yes, sir.

Q. Now, I want to get this clear in my mind as to what you have told me. That every time, including on this date, that your truck was loaded with lime from this storage tank, when the lime got from six to eight inches from the top of your truck tank, you would tell the operator to cut off the pump?
A. Yes, sir.
*916 Q. And you did that on this date ?
A. Yes, sir.
He further testified that immediately upon the truck’s being filled he departed the area in order to spread the lime upon the highway which was being constructed. He was therefore without knowledge, having no occasion to know of the injuries incurred by plaintiff.
The testimony of Dr. Puryear corroborates the evidence of the plaintiff’s witnesses in that it indicates without controversy that the plaintiff was treated for injuries received by him on August 24, 1966.
After considering the entirety of the evidence, we are of the opinion that the verdict of the jury, essentially that the accident did not happen, was contrary to the overwhelming weight of the evidence.
In Moak v. Black, 230 Miss. 337, 348, 92 So.2d 845, 850 (1957) we stated:
The power of the court to review the evidence and set aside the verdict of the jury in a case of this kind on the ground that the verdict is against the overwhelming weight of the evidence is a necessary incident to the right of trial by jury itself. The power of the court to set aside the verdict of the jury and grant a new trial in such cases should be exercised with the utmost care. But no court may refuse to exercise such power when fully convinced of its duty to do so. After a careful review of the evidence, we are convinced that the verdict of the jury in this case was against the overwhelming weight of the evidence, and that the appellants are entitled to a new trial.
See also Employers Mutual Casualty Co. v. Ainsworth, 249 Miss. 808, 164 So.2d 412 (1964); Montgomery Ward & Co. v. Windham, 195 Miss. 848, 17 So.2d 208 (1944); and Beard v. Williams, 172 Miss. 880, 161 So. 750 (1935).
Reluctant as we are to overturn the verdict of the jury, it is apparent that the positive, direct and unequivocal proof offered by the plaintiff preponderates to such an extent over the qualified denial of Martin that justice requires a new trial.
The assignment of error relating to certain of the instructions obtained by the defendants has some merit which we do not presently reach as we believe these instructions will not be requested on a second trial.
Reversed and remanded.
ETHRIDGE, C. J., and RODGERS, JONES, and SMITH, JJ., concur.